**James Elijah BROWN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. O-85-423.**

Court of Criminal Appeals of Oklahoma.

July 20, 1987.

Rehearing Denied Aug. 20, 1987.

Michael Parks, Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, McAlester, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, James Elijah Brown, pled guilty to the crime of Forgery in the Second Degree in Pittsburg County District Court in Case No. CRF–81–164 and was sentenced to a three (3) year suspended sentence on February 10, 1982. On September 26, 1983, appellant was charged with Larceny of a Domestic Animal in the District Court of Pushmataha County in Case No. CRF–83–71. On October 24, 1983, the District Attorney of Pittsburg County filed an application to revoke appellant's suspended sentence. A hearing on the State's application to revoke was held, and on January 16, 1985, the trial court revoked appellant's suspended sentence in Pittsburg County Case No. CRF–81–164. Subsequently, on September 12, 1985, after two (2) days of trial, a jury returned a verdict of not guilty in Pushmataha County Case No. CRF–83–71.

On September 25, 1983, appellant and three (3) other people stole three hogs which belonged to Thomas Erwin and Wilburn Thurman. Mr. Thurman had a lease on the Weyerhouser forestry range in Pushmataha County where he ran some of Mr. Erwin's hogs and some of his own hogs. The area in which the lease was located is unfenced, open range. However, the hogs were all clearly identified with the unique earmarks of Mr. Erwin and Mr. Thurman. Appellant and his confederates trapped the three (3) hogs in a pen and transported them to appellant's house. When the hogs were stolen, Mr. Erwin and Mr. Thomas were hiding in the bushes nearby conducting a "stake-out". Also, Herman Carter, Troy Carter, and Carl Carter all observed appellant, pulling a trailer with hogs in it, driving away from the area where the pen was located. That same morning, Herman Carter had seen the appellant pulling an empty trailer headed towards the area where the pen was located. After Mr. Erwin and Mr. Thurman received some information about appellant from Herman Carter, they contacted the Sheriff and arranged to meet him at a location near appellant's house. When they arrived at appellant's house, the pickup and trailer were in the front yard. The Sheriff went to the front door and knocked, but there was no response for several minutes. While they were waiting, all three (3) men heard the sound of hogs coming from behind appellant's house. Eventually, appellant's former son-in-law opened the door and appellant came out of the house and the Sheriff read him his *Miranda* rights. While the Sheriff was reading him his rights, appellant turned to Mr. Erwin and Mr. Thurman and said, "How many of those damn hogs is [sic] in there? What is it going to cost me to get this settled?" After receiving permission to look around, the Sheriff looked in the trailer and saw blood and corn. He also observed fresh hog tracks around the pen and more blood.

A few days later, Mr. Thurman found the three (3) hogs within one mile of appellant's house, which is approximately twenty-five (25) to thirty (30) miles from the Weyerhouser lease. When he found the hogs, the hog's ears had been freshly cut and re-marked and bore appellant's former son-in-law's earmark.

Appellant testified at the revocation hearing and testified that he did not remove any hogs from the pen in question.

In his first three assignments of error, appellant contends that the evidence was insufficient to support the trial court's determination that the State proved, by a preponderance of the evidence, that appellant violated 21 O.S.1981, § 1716, Larceny of Domestic Animals, by stealing three (3) hogs.

He first argues that the State failed to prove that the hogs in question were domestic animals under 21 O.S.1981, § 1716. Appellant maintains that since the hogs were neither enclosed nor confined in any type of pen or enclosure, and since they ran at large on real property owned by Weyerhouser, they are not domestic animals. We disagree. Title 21 O.S. 1981, § 1716 provides in pertinent part:

Any person in this State who shall steal any horse, jackass, jennet, mule, cow, or *hog*, shall be guilty of a felony and upon conviction shall be punished by confine-

ment in the State Penitentiary for a term of not less than three (3) years, nor more than ten (10) years; .... (Emphasis Added)

The hogs in the instant case were owned by Mr. Erwin and Mr. Thurman, were marked with their unique earmarks and were allowed to run on Mr. Thurman's Weyerhouser lease. Also, Mr. Erwin testified that he brought water and feed to the hogs, and on occasions brought superior quality hogs to improve the breed. Clearly, this evidence is sufficient to prove that the hogs in this instant case fall within the purview of 21 O.S.1981, § 1716. *See, Hall v. State,* 312 P.2d 981 (Okl.Cr.1957).

Appellant also asserts that the State failed to prove that Mr. Erwin and Mr. Thurman owned the hogs in question. We find this assignment to be wholly without merit. Mr. Erwin and Mr. Thurman each testified that they owned the hogs, and the hogs clearly bore their unique earmarks. The Sheriff also testified that he knew their respective earmarks. The fact that the hogs were allowed to run on the leased property does not, standing alone, prove that the hogs were abandoned. The testimony at the hearing clearly shows that it is a custom in that part of the State to keep hogs in unfenced areas. We find that the State proved by a preponderance of the evidence that Mr. Erwin and Mr. Thurman owned the hogs.

Appellant next alleges that the State failed to prove that appellant carried the hogs away with the intent to permanently deprive the owner of the possession thereof. We first note that appellant never claimed that he innocently acquired the hogs; rather, his defense was that he never took the hogs. However, this testimony was clearly contradicted by the testimony of Mr. Erwin and Mr. Thurman and the testimony of Herman Carter, Carl Carter, and Troy Carter, all of whom testified that they saw appellant taking hogs away from the area of the pen in question. Moreover, when the Sheriff and Mr. Erwin and Mr. Thurman went to appellant's house, there was a considerable delay after they knocked on the door and during the delay they heard the sound of hogs from behind the house. During a thorough search of the premises, the Sheriff observed fresh moist hogs tracks around the pen in back of the house. The Sheriff and the owners also observed fresh blood in the pen area. When the hogs were finally located several days later, they were approximately one mile from appellant's house, which is twenty-five (25) to thirty (30) miles from the pen where the hogs were originally trapped. Additionally, at the time of their recovery, the hogs ears had been freshly cut in an attempt to alter the earmarks. We are of the opinion that all of these facts, although some are circumstantially proved, are consistent with the trial court's finding that appellant harbored the requisite intent to permanently deprive Mr. Erwin and Mr. Thurman of the possession of their hogs. *See Bellows v. State,* 545 P.2d 1303 (Okl. Cr.1976). Consequently, we find that the State proved the elements of the crime of Larceny of Domestic Animals by a preponderance of the evidence. This assignment of error is without merit.

Appellant finally urges that the order revoking his suspended sentence should be set aside because he was subsequently acquitted in a jury trial in Pushmataha County of the crime of Larency of Domestic Animals. He argues that since the crime for which he was acquitted was the same offense that caused the Pittsburg County Court to revoke his suspended sentence, the order revoking his suspended sentence should be set aside. However, we do not have the record of the jury trial in Pushmataha County to determine what evidence was presented in that proceeding. Furthermore, the burden of proof at the jury trial was guilt beyond a reasonable doubt; whereas, at the revocation hearing the burden was only a preponderance of the evidence. Having previously found that the State met this burden at the revocation hearing, we hold that the subsequent acquittal by a jury will not disturb the trial court's order revoking appellant's suspended sentence. This assignment is groundless. Accordingly, the order of the trial court revoking appellant's suspended sentence is AFFIRMED.

BRETT, P.J., concurs in results.

PARKS, J., specially concurring.

Rehearing Denied Aug. 20, 1987.