569 A.2d 652

**Mary A. BAYNARD**

v.

**STATE of Maryland.**

**No. 71, Sept. Term, 1989.**

Court of Appeals of Maryland.

Feb. 12, 1990.

532

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for petitioner.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued Before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Maryland (Retired), Specially Assigned, JJ.

ADKINS, Judge.

Petitioner Mary A. Baynard argues forcefully that the Circuit Court for Caroline County should not have revoked her probation for violation of a condition of probation that she "not drink alcohol at any time" when, according to her, the record shows that she was incapable of complying with that condition. In an unreported opinion, the Court of Special Appeals rejected the argument. We do not reach it, for we conclude that a second ground relied on by the trial court for revocation of Baynard's probation was not factually sufficient to justify that action. Before we explain our decision, we shall sketch the background of the case.

## I.

Baynard has an IQ of 58. She functions at the level of a seven year old child. She lives, for the most part, with her parents. According to the record, her parents are "known alcoholics who are intoxicated on most occasions" and whose "apartment is a hangout for local winos." Baynard also "suffers from the disease of alcoholism." She is no stranger to the judicial system in Caroline County, nor to various social service agencies in that vicinity. Several assault and battery, trespass, and disorderly conduct charges appear on her police record for the years 1974 and 1975. A ten-year hiatus follows, then a series of similar charges appear on Baynard's record, beginning in 1985 and ending with a guilty plea to resisting arrest on 9 January 1987—the offense for which Baynard was on probation. Her alleged violation of that probation is the reason this case is now before us.

When the charges against Baynard resulted in convictions, and most of them did, she generally was placed on probation, occasionally following a short period of incarceration. In January 1976, for example, her sentence of five-months incarceration was suspended in favor of three years of probation, subject to the conditions that she drink no alcohol and attend alcohol and mental health clinics. On 8 March 1976, the Department of Parole and Probation advised the court that they were placing Baynard "in a non-active category of supervision." The Caroline County Health Department stated that she "simply cannot comprehend the information they would be trying to get across to her because of her extremely low intelligence." Parole and Probation concluded "she simply does not understand her conditions of probation" and that she "is not amenable to probation supervision because of her retardation."

In 1986, she was placed on probation with restrictions similar to the 1976 conditions. The probation agent concluded that because of her alcoholism and mental retardation, she was "not amenable to community based supervision."

In 1985, Baynard spent two weeks at the A.F. Whitsitt Center.[1] During her stay, "she was taught to bathe and how to eat with a knife and fork." The Center suggested "the need for placement in a suitable structured environment such as a foster home." Agencies such as Adult Protective Services of Caroline County, Caroline County Social Services, and the Caroline County Health Department "were contacted, all to no avail." Holly Center[2] and Vocational Rehabilitation also "proved to no avail."

In any case, as we have indicated, on 28 July 1987, Baynard pled guilty to a charge of resisting arrest. On 15

---

**1.** The A.F. Whitsitt Center is located in Chestertown on the Eastern Shore. The facility is an alcoholism rehabilitation center.

**2.** The Holly Center is located in Salisbury and serves the nine counties of the Eastern Shore. The Center offers a full range of services to all retarded individuals and their families.

September, with Baynard's history before it by way of a presentence investigation, the Circuit Court for Caroline County sentenced her to five-years imprisonment, suspended in favor of five-years probation upon the following conditions:

1. Do not drink alcohol at any time.

2. Whether drinking or not, do not cause any trouble by disturbing peace, resisting arrest, or disorderly conduct.

On 2 March 1988, Baynard was charged with disorderly conduct, being intoxicated in a public place, and related offenses. The State recommended that her probation be terminated. At a probation revocation hearing, the circuit court found that she had been drinking, in violation of the first condition of her probation, and that she had been involved in disorderly conduct, in violation of the second. Referring to the presentence investigation, the court expressed frustration with its inability to deal with problems like that presented by Ms. Baynard. The judge concluded that:

Nothing ... has taught you any lesson. I'm not convinced ... well, you have your limitations, but there's nothing that says you're not capable of learning. We just haven't found the right Hickory stick to teach you with yet, so I'm going to try this one.

The court terminated probation and imposed the original five-year sentence.

## II.

When it revoked probation, the circuit court relied on Baynard's purported violation of both conditions. If either ground was not sufficiently established, the order of revocation cannot stand. *Smith v. State*, 306 Md. 1, 11, 506 A.2d 1165, 1170 (1986); *Dean v. State*, 291 Md. 198, 203, 434 A.2d 552, 555 (1981). We hold that the evidence before the court was insufficient to justify a finding that Baynard was guilty of disorderly conduct or disturbing the peace. We explain.

 Baynard was not convicted of disorderly conduct or disturbing the peace as a result of the incident that caused the termination of her probation. That is not critical, since

> it is not necessary that a conviction precede a determination that the probationer has violated a condition of probation requiring him to obey all laws. If it is shown by independent, probative evidence that the probationer has committed a crime subsequent to his probation and the trial court is reasonably satisfied by that evidence that the probationer committed the crime, probation may be revoked. . . .

*Dean,* 291 Md. at 203, 434 A.2d at 555. We recognize, too, that the court's reasonable satisfaction need be established by no more than a preponderance of the evidence. *Wink v. State,* 317 Md. 330, 563 A.2d 414 (1989). With these principles in mind, we review the evidence upon which the court relied to revoke probation. That evidence was given by Deputy Sheriff William Rude.

On 2 March 1988, Rude, then a Denton police officer, was dispatched to 219 North 3rd Street, in that town. Upon his arrival he found a crowd of about 12 persons, and Baynard. Baynard staggered and spoke incoherently. Her breath was redolent of the odor of alcohol. Rude offered to take her home. Another woman said that Baynard "needed to get her stuff" and helped Baynard collect some clothing and a bottle of vodka. Baynard's continuing navigational difficulties brought her near a parked car and another bystander shouted "Get her away from my car!" Baynard moved back towards Rude's police car and this time he told her to enter it, or she would be arrested. To this invitation Baynard replied, "I don't give a Fuck!" Rude arrested her, handcuffed her, and put her in the police car.

Rude went on to explain that his main concern was to get Baynard away from that location because he was concerned for her safety. He was not concerned with the safety of the other 12 people. He "didn't know what the twelve were capable of, and Ms. Baynard was in no condition to defend

herself." There "was a lot of shouting and yelling ... by the bystanders and by Ms. Baynard." Only Baynard was arrested, however. Rude perceived her as "the catalyst ... to the situation."

Three statutes may proscribe Baynard's conduct as disorderly: Maryland Code (1957, 1987 Repl.Vol.), Article 27, §§ 121, 122, and 123. Section 121, in pertinent part, condemns the wilful obstruction of any public street, the wilful disturbance of the neighborhood "by loud and unseemly noises," and profane cursing or swearing upon or near a public street and within the hearing of persons on the street. Section 122 proscribes "acting in a disorderly manner to the disturbance of the public peace" or wilfully acting in "a disorderly manner by making loud and unseemly noises or by profanely cursing, swearing or using obscene language, on or about any public place." Section 123(a) also makes it a misdemeanor for one to "act in a disorderly manner to the disturbance of the public peace, upon any public street."

Baynard was certainly on a public street on 2 March 1988, when Rude appeared. But there is no suggestion that she was obstructing the street in a way prohibited by § 121. While it may be a violation of § 123 to disobey, under some circumstances, a peace officer's lawful command to move on, *Drews v. State,* 224 Md. 186, 192, 167 A.2d 341, 344 (1961), *vacated and remanded,* 378 U.S. 547, 84 S.Ct. 1900, 12 L.Ed.2d 1032, *judgments reinstated and reaffirmed,* 236 Md. 349, 204 A.2d 64 (1964), *appeal dismissed and cert. denied,* 381 U.S. 421, 85 S.Ct. 1576, 14 L.Ed.2d 693 (1965), Baynard did not do that. Assuming that Rude's invitation to enter his car was equivalent to such a request, Baynard's response was "I don't give a Fuck!" This was not a refusal, but a statement of her indifference as to whether she rode with him or not. That single sentence is the only report we have of any language that Baynard actually used. And that language does not amount to profanity or obscene language. *Diehl v. State,* 294 Md. 466, 473–474, 451 A.2d 115, 119–120 (1982), *cert.*

*denied,* 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 363 (1983). Nor could that sentence be seen as an effort to incite Rude. The vulgar noun was not directed at Rude; it merely expressed Baynard's state of mind. *See id.* at 474–478, 451 A.2d at 120–122.

█ This leaves only § 121, wilful disturbance by making loud and unseemly noise, as a basis for finding Baynard guilty of disorderly conduct. Baynard, like the other 12 people at 219 North 3rd Street, was making some noise. But what the statute proscribes is noise that is not only loud but that is inappropriately loud under the circumstances, and that is intended to disturb the peace. *See Matter of Nawrocki,* 15 Md.App. 252, 256, 289 A.2d 846, 849, *cert. denied,* 266 Md. 741 (1972). We do not know how loudly Baynard was speaking, so we cannot tell whether the volume of her voice was inappropriately loud. We do not even know that her speech or actions were disturbing anybody, or that she had initiated the activity that Rude described. His statement that she was the "catalyst" may mean no more than that she was the focus of that activity. He himself, we repeat,

> was ... concerned, not necessarily with the [ ] twelve people there, for their safety, but [ ] ... for Ms. Baynard's safety. [He] didn't know what the twelve were capable of, and Ms. Baynard was in no condition to defend herself.

This testimony describes the victim of disorderly conduct, not the perpetrator of it. The circuit court did not have before it a sufficient evidentiary basis to support a finding that Baynard had violated the second condition of her probation.

### III.

█ For the reasons stated, we reverse the judgment of the Court of Special Appeals. The judgment of the circuit court must be vacated and the case remanded to that court for further proceedings. When it gets there, the circuit

court will be able to give further attention to Baynard's alcoholism. The court will be in a position to consider whether revocation of probation and consequent incarceration is desirable in Baynard's case. Violation of a condition of probation does not necessarily mandate imposition of the suspended sentence; a court has discretion to choose among several alternatives. Md.Code (1957, 1987 Repl.Vol.), Art. 27, § 642; *Maus v. State,* 311 Md. 85, 107, 532 A.2d 1066, 1077 (1987) (alternatives range from continuing probation to reimposing full remaining term of suspended sentence). Given Baynard's various problems, the strains on our penal system, and the proper objectives of criminal sanctions, *Woods v. State,* 315 Md. 591, 604, 556 A.2d 236, 242 (1989) (objectives of sentencing are punishment, deterrence and rehabilitation) (quoting *Smith v. State,* 308 Md. 162, 166, 517 A.2d 1081, 1083 (1986)); *Johnson v. State,* 274 Md. 536, 540, 336 A.2d 113, 115 (1975), it may be that the trial court can devise a disposition that will be more appropriate for Baynard and of benefit to the community.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY AND TO REMAND TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY CAROLINE COUNTY.