616 A.2d 877

**Michael GIBSON**

v.

**STATE of Maryland.**

**No. 41, Sept. Term, 1992.**

Court of Appeals of Maryland.

Dec. 14, 1992.

688

Melissa M. Moore, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for appellant.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

I

By statute, a court entering a judgment of conviction may generally suspend all or part of a prison sentence, and place the defendant on probation upon such terms and conditions as the court deems proper. Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 641A. Probation is by definition conditional; the defendant is on notice that

breaching those conditions may lead to the reinstatement of the original sentence. *Clipper v. State*, 295 Md. 303, 313, 455 A.2d 973 (1983). A probationer is entitled to remain at liberty as long as he abides by the conditions of probation, and probation may not be revoked unless the probationer has in fact acted in violation of one or more conditions stipulated by the court. *Dean v. State*, 291 Md. 198, 202, 434 A.2d 552 (1981).

A probation revocation hearing involves an adjudication of whether an individual violated the terms of release and whether this violation should result in reconfinement. *Bergstein v. State*, 322 Md. 506, 515, 588 A.2d 779 (1991). *See* Maryland Rule 4–347. It is firmly established that a revocation of probation hearing is a civil proceeding, in which the probationer is not cloaked with the full panoply of constitutional rights and procedural safeguards enjoyed by a defendant in a criminal cause. *Chase v. State*, 309 Md. 224, 238–239, 522 A.2d 1348 (1987); *Clipper, supra,* 295 Md. at 307–308, 455 A.2d 973; *Howlett v. State*, 295 Md. 419, 424, 456 A.2d 375 (1983); *Dean, supra,* 291 Md. at 202, 434 A.2d 552. The trial court may revoke probation if it is reasonably satisfied by a preponderance of the evidence that a violation has occurred. *Baynard v. State*, 318 Md. 531, 537, 569 A.2d 652 (1990); *see Dean, supra,* 291 Md. at 202–203, 434 A.2d 552; *Scott v. State*, 238 Md. 265, 276, 208 A.2d 575 (1965). A revocation of probation is not a second punishment added upon the original sentence; it represents, rather, the withdrawal of favorable treatment previously accorded the defendant. *Clipper, supra,* 295 Md. at 313, 455 A.2d 973.

## II

Michael Gibson was convicted on two counts of armed robbery by the Circuit Court for Baltimore City (Johnson, J.) on September 13, 1985. The court sentenced Gibson on November 5, 1985, to 15 years in prison, with all but two years suspended, and a five-year period of probation was

imposed. The probation order set forth a number of conditions, notably condition 4, that the defendant obey all laws, and condition 8, requiring that the defendant not "illegally possess, use, or sell any narcotic drug, 'controlled dangerous substance' or related paraphernalia." Probation began upon Gibson's release from prison on March 19, 1987.

On November 11, 1989, the same court issued a warrant citing Gibson for violation of probation. It did so after learning that Gibson had been arrested and charged with three narcotics offenses, for which he stood trial before a jury on December 13–14, 1989 (Themelis, J., presiding). At trial of the criminal case, police officers Joseph Burns and Bradley Thomas testified that on the night of February 27, 1989, they had responded to complaints of narcotics activities in the 2600 block of Loyola Southway in Baltimore City. They stated that while hiding among bushes just after midnight, they saw Gibson and another man, Charles Morris, walk to a house, climb the front steps, and pause on the porch. According to the testimony, Gibson removed a plastic bag from his coat pocket and passed it to Morris; Morris then looked down the street several times, apparently spotted police patrol cars, and dropped the bag on the porch floor.

The officers stated further that Gibson and Morris left the porch, and walked down and across the street to join a third man at the corner, where all three were detained by police. Officer Burns testified that he retrieved the discarded bag, which contained 21 capsules of a white substance and a small packet of what appeared to be marijuana. Gibson and his companions were arrested at this point. Later laboratory analysis indicated that the capsules contained cocaine, and that the suspected marijuana was indeed that substance. At cross-examination, the officers testified that these events took place on a wet, misty night. They acknowledged that they found neither drugs nor money on Gibson after the arrest.

Gibson testified on his own behalf, stating that he and Morris had arrived at the house around 9:00 p.m. to visit

Morris's girlfriend, Kim Gray. He said that the three watched television until shortly after midnight, at which time he and Morris left by way of the front door and the porch; they then met and talked to a friend of Morris across the street. Gibson denied stopping on the porch. He denied carrying drugs. He denied passing a plastic bag to Morris. Kim Gray similarly testified that they all watched television from about nine or ten o'clock until midnight. She stated that she then escorted Gibson and Morris to the front door, and watched them cross the porch without pausing and leave. She added that the porch light was off during all of the events in question. The defense did not refute the State's assertion that drugs were found on the porch.

The jury found Gibson not guilty of possession with intent to distribute cocaine, not guilty of possession of cocaine, and not guilty of possession of marijuana.

The circuit court (Johnson, J.) conducted Gibson's probation revocation hearing on January 10, 1990. The evidence adduced at the hearing essentially mirrored that presented at the criminal trial, albeit in abbreviated form. The court found that Gibson had violated condition 8 of his probation order, *i.e.*, that he illegally possessed narcotic drugs. Observing that the hearing was governed by a lower standard of proof, the preponderance of the evidence, instead of a criminal trial's standard of proof beyond a reasonable doubt, Judge Johnson concluded: "The Court believes the officer, and the Defendant's credibility is very bad. I think he lied." The court then reinstated the remaining 13 years of Gibson's prison sentence for the 1985 armed robbery conviction.

Gibson noted a timely appeal to the Court of Special Appeals, challenging the revocation on separate grounds of fundamental fairness and collateral estoppel. In an unreported opinion, the Court of Special Appeals held that the revocation did not offend principles of fundamental fairness. The intermediate appellate court did not reach Gibson's second argument for lack of an adequate record.

Gibson then sought post-conviction relief from the Circuit Court for Baltimore City (Brown, J.), which on November 22, 1991, granted him leave to file a belated appeal, supported by a full record, with regard to the issue of collateral estoppel as it bears on this case. We granted certiorari on our own motion, without prior review by the Court of Special Appeals, to decide whether Gibson's acquittal of the criminal charges estopped the State from seeking to have his probation revoked. We hold that it did not.

## III

Both the Fifth Amendment of the Federal Constitution, reaching State prosecutions via the Fourteenth Amendment, and Maryland common law provide that no person shall be put in jeopardy twice for the same offense. *Ferrell v. State*, 318 Md. 235, 241, 567 A.2d 937 (1990). Moreover, it is established under both the Constitution and Maryland common law that the doctrine of collateral estoppel is embodied in the double jeopardy prohibition. *Dowling v. United States*, 493 U.S. 342, 347, 110 S.Ct. 668, 671, 107 L.Ed.2d 708 (1990); *Ashe v. Swenson*, 397 U.S. 436, 445–446, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970); *Ferrell, supra*, 318 Md. at 241, 567 A.2d 937; *Robinson v. State*, 307 Md. 738, 741–742, 517 A.2d 94 (1986). The collateral estoppel doctrine operates to a preclusive end, so that when an issue of ultimate fact has been determined once by a valid and final judgment, that issue cannot be litigated again between the same parties in a future action. *See Dowling, supra*, 493 U.S. at 347–348, 110 S.Ct. at 671–672; *Ashe, supra*, 397 U.S. at 443, 90 S.Ct. at 1194. *See also Cook v. State*, 281 Md. 665, 668–670, 381 A.2d 671 (1978) (differentiating collateral estoppel from the related doctrine of res judicata).

Gibson now contends that his acquittal of drug charges represented precisely this sort of preclusive finding of fact that must bar a subsequent revocation of probation. He argues first that the trial presented to the jury two diametrically opposed, irreconcilable versions of the events that

took place on the night of February 27, 1989. He insists that the not-guilty verdict signifies that the jury did not believe the police officers and that Gibson's version, in which drugs were not involved, necessarily established the truth of the matter. No other interpretation of the verdict, Gibson says, is possible. He reasons that since the jury thus proclaimed him not to have possessed the cocaine and marijuana, he did not violate condition 8 of his probation order prohibiting drug activity.

The second phase of Gibson's argument addresses the differing standards of proof that prevail at a criminal trial and a civil probation revocation hearing. Seizing upon language in *Ashe v. Swenson, supra,*[1] he contends that the court in his revocation hearing acted in an improperly hypertechnical manner when it invoked the lesser proof standard of preponderance of the evidence to justify its conclusion, contrary to the jury's, that Gibson had indeed possessed drugs. In sum, Gibson maintains that the State wrongly litigated the facts of his case twice, using the civil hearing with its lower evidentiary standard as a technical foil to circumvent the findings of his jury. He concludes that his reincarceration was illegal.

We do not share Gibson's view that the different standards of proof governing a criminal trial and a civil hearing are hypertechnical, archaic relics of the past for the purposes of the collateral estoppel doctrine. To the contrary, the distinction between proof beyond a reasonable

---

1. "The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.'" *Ashe, supra,* 397 U.S. at 444, 90 S.Ct. at 1194 (citations omitted).

doubt and proof by a preponderance of the evidence is fundamental, and dispositive, in this case. As noted above, it is well settled that a court need only reasonably satisfy itself that a violation has occurred before revoking probation. *Baynard, supra,* 318 Md. at 537, 569 A.2d 652; *Dean, supra,* 291 Md. at 202, 434 A.2d 552; *Scott, supra,* 238 Md. at 276, 208 A.2d 575. *See Dunn v. State,* 65 Md.App. 637, 644–647, 501 A.2d 881 (1985). And the court's reasonable satisfaction need be established by no more than a preponderance of the evidence. *Baynard, supra,* 318 Md. at 537, 569 A.2d 652; *accord Wink v. State,* 317 Md. 330, 335, 563 A.2d 414 (1989) (tracing the origin and use of reasonable satisfaction in Maryland cases demonstrates that the expression does not connote a different standard from preponderance of the evidence).

As it is not necessary for a court conducting a probation revocation hearing to find beyond a reasonable doubt that the probationer has committed a violation, Gibson errs in asserting that his earlier acquittal on criminal charges precludes revocation. A verdict of not-guilty is hardly tantamount to a finding that no wrong was done. Gibson's acquittal does not necessarily prove his innocence; rather, it reflects the State's inability to prove its case beyond a reasonable doubt. *In re Neil C.,* 308 Md. 591, 595, 521 A.2d 329 (1987). *See United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984). Simply because the jury did not assess the evidence to be certain enough or compelling enough to convict Gibson of felonies, it does not follow that the State failed to assemble evidence sufficient to persuade the court that illegal acts probably occurred. At the trial, the jury may well have hesitated to convict because of the darkness, low visibility, and misty conditions that prevailed on the night in question, as well as the distance—about 50 feet—between the porch and the officers' hiding place; these factors may have cast a measure of doubt on Gibson's participation in any drug transaction. Yet there was ample room under the less-exacting standard of the preponderance

of the evidence for the court to find at the revocation hearing that he possessed narcotics in violation of his probation. Officer Burns testified to that effect, and the police recovered cocaine and marijuana from the floor of the porch where Gibson admittedly had walked.

This court in 1965 affirmed an order reincarcerating a probationer acquitted on charges of assault with intent to rape. *See Scott, supra,* 238 Md. 265, 208 A.2d 575. There the trial judge at the revocation proceeding took into account hearsay evidence inculpating the probationer that had been excluded from the criminal trial itself. We observed then:

> "The facts presented to or coming to the knowledge of the judge, as to the breach of the conditions of probation, need not establish guilt beyond a reasonable doubt as in criminal offenses; all that is required is that the facts before him be such that the judge reasonably could be satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty."

*Id.* at 276, 208 A.2d 575. The principles underlying *Scott* remain as valid today as when they were first articulated. A judge, in determining whether to revoke probation, is not bound by the constraints of the reasonable doubt standard of proof. A preponderance of the evidence demonstrating a breach of conditions is sufficient to warrant revocation. We see no overriding difference between *Scott,* in which acquittal followed the suppression of certain hearsay evidence, and the instant case, in which acquittal flowed from the jury's assessment of the State's evidence in its entirety. Neither the quality nor the quantity of the evidence adduced at the criminal trial controls. It is, instead, the quality and the quantity of the evidence offered at the civil revocation proceeding that tells.

Our decision here is consistent with the prevailing jurisprudence. The United States Supreme Court has held that an acquittal in a criminal case does not preclude the government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof.

*One Assortment of 89 Firearms, supra,* 465 U.S. at 361–362, 104 S.Ct. at 1104 (civil *in rem* forfeiture proceeding after acquittal); *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972) (same); *see Dowling, supra,* 493 U.S. at 349–350, 110 S.Ct. at 672–673. A decisive majority of the state appellate courts called upon to answer this question have held that acquittal in a criminal trial does not collaterally estop revocation of probation based on the same offense. *See Avery v. State,* 616 P.2d 872 (Alaska 1980); *State v. Jameson,* 112 Ariz. 315, 541 P.2d 912 (1975); *In re Coughlin,* 16 Cal.3d 52, 127 Cal.Rptr. 337, 545 P.2d 249 (1976); *Russ v. State,* 313 So.2d 758 (Fla.1975); *Johnson v. State,* 142 Ga.App. 124, 235 S.E.2d 550 (1977); *Culley v. State,* 179 Ind.App. 345, 385 N.E.2d 486 (1979); *People v. McEntyre,* 127 Mich. App. 731, 339 N.W.2d 538 (1983); *State ex rel. Cooper v. Hutcherson,* 684 S.W.2d 857 (Mo.App.1984); *Brown v. State,* 740 P.2d 164 (Okla.Crim.App.1987); *State v. Fortier,* 20 Or.App. 613, 533 P.2d 187 (1975); *State v. Delp,* 614 S.W.2d 395 (Tenn.Crim.App.1980); *Bouyer v. State,* 655 S.W.2d 355 (Tex.App. 2 Dist.1983); *State v. Cyganowski,* 21 Wash.App. 119, 584 P.2d 426 (1978). *See also* Wade R. Habeeb, Annotation, *Acquittal in Criminal Proceeding as Precluding Revocation of Probation on Same Charge,* 76 A.L.R.3d 564 (1977).

## IV

Appellate review of an order revoking probation analyzes whether the trial court abused its discretion for want of any reasonable basis for the revocation. *Wink, supra,* 317 Md. at 338–339, 563 A.2d 414; *Coles v. State,* 290 Md. 296, 307, 429 A.2d 1029 (1981); *Scott, supra,* 238 Md. at 272, 208 A.2d 575. The appellate court will leave the revocation undisturbed unless the trial court's determination that a probation violation occurred was clearly erroneous or legally insufficient. *Wink, supra,* 317 Md. at 339, 563 A.2d 414. In this case, the circuit court received evidence from the police that reasonably supported a finding that Gibson

possessed drugs. Judge Johnson heard the probationer's own testimony, and found it to lack credibility; such an assessment is properly the province of the judge conducting the hearing. The trial court did not abuse its discretion in revoking Gibson's probation.

JUDGMENT AFFIRMED, WITH COSTS.