65 A.3d 203

**In the Matter of Merilee ROSENBERG for the Appointment of a Guardian of the Property.**

**No. 2744, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

May 1, 2013.

306

Ira E. Zimmerman, Silver Spring, MD, for Appellant.

Robert M. McCarthy, Bethesda, MD, for Appellee.

Panel: KRAUSER, C.J., WRIGHT and BERGER, JJ.

KRAUSER, C.J.

Merilee Rosenberg, appellant, underwent brain surgery, in 2008, for Parkinson's disease. Unable thereafter to manage her financial affairs due to the side effects of her surgery and her Parkinson's disease, she consented to the appointment of a guardian over her property by the Circuit Court for Montgomery County. Two years later, believing that she had sufficiently recovered to resume control over her affairs, she urged the court-appointed guardian of her property to request a hearing, before the Montgomery County circuit court, to determine whether the property guardianship should be terminated.

After a hearing was held, as requested, the Montgomery County circuit court denied her request to terminate the

guardianship. That decision prompted this appeal, which presents three issues. Rephrased so as to facilitate review, they are:

    I.    Whether the circuit court applied an incorrect legal standard in deciding to continue the guardianship of the property;

    II.    Whether the circuit court erred in failing to consider a less restrictive alternative to guardianship; and

    III.    Whether there was sufficient evidence to support the circuit court's decision to continue the guardianship of the property.

Because we conclude that the circuit court did not apply the correct legal standard in declining to terminate the guardianship of Ms. Rosenberg's property, we vacate that decision and remand for further proceedings. On remand, it is our view that the circuit court may consider less restrictive alternatives to a full guardianship of property, if it deems such a course of action fitting and appropriate.

### Background

Ms. Rosenberg was born in 1942. After earning a Ph.D. in French, she was employed as a professor of French and German at the University of Tennessee. Then, after moving to Washington, D.C., and earning a law degree, she worked as an attorney for the United States Department of Veterans Affairs, where she specialized in federal contract law.

When Ms. Rosenberg was 54 years old, she was diagnosed as suffering from Parkinson's disease. During the ten-year period that followed, her condition deteriorated, and, despite "massive doses" of medication, her symptoms worsened. As a consequence, her neurologist, Thomas Hyde, M.D., suggested that she undergo "deep brain stimulation."[1]

---

1.   Deep brain stimulation is "functional neurosurgery in which stimulating electrodes are placed in the basal ganglia [a specific category of nerve cells] for management of movement disorders, including Parkinson's disease...." *Stedman's Medical Dictionary* 1838 (28th ed. 2006).

When she was admitted to Suburban Hospital, in the summer of 2008, for that procedure, two physicians examined her "to determine whether she was competent to consent to medical treatment and handle her financial matters." After they found that she was competent to consent to medical treatment, though not competent to manage her finances, they obtained her consent to undergo deep brain stimulation.

Following that surgery, Ms. Rosenberg experienced, in the words of Dr. Hyde, "some postoperative medical problems that impaired her cognitive function"; in fact, she was, at least initially, "much worse off after the surgery than ... before." When the time came to discharge her to "an acute rehabilitation facility," the hospital filed a petition, in the Circuit Court for Montgomery County, seeking the appointment of "a temporary and permanent guardian of the property" for Ms. Rosenberg. A guardian was necessary, the hospital opined, "to manage Ms. Rosenberg's finances and property to assist in creating a discharge plan" and then "to consent to decisions regarding long term care."

The hospital further stated that Robert McCarthy, Esquire, appellee, was willing to serve as temporary and permanent guardian of Ms. Rosenberg's property and was qualified for appointment under Maryland law,[2] and that Ria Rochvarg, Esquire, was "willing to serve as the attorney for [Ms. Rosenberg] if appointed by the Court." The circuit court promptly entered orders appointing Ms. Rochvarg as counsel to represent Ms. Rosenberg and Mr. McCarthy as the temporary guardian of her property. Although Ms. Rochvarg, as counsel

---

2. Maryland Code (1974, 2001 Repl. Vol., 2008 Supp.), § 13–207(a) of the Estates and Trusts Article ("ET"), sets forth, in order of preference, a list of persons entitled to appointment as guardian for a disabled person. As noted in the hospital's petition, Mr. McCarthy is qualified as a "person or corporation nominated by a person who, or institution, organization, or public agency which, is caring for" the disabled person. *Id.* § (a)(8).

ET § 13–207 was subsequently amended, but the amendment made only minor stylistic changes and updated a statutory cross reference. Throughout this opinion, we shall cite the versions of statutes and rules that were effective at the relevant times.

for Ms. Rosenberg, initially requested that the guardianship petition be denied, Ms. Rosenberg ultimately consented to an order appointing Mr. McCarthy as the guardian of her property.

Mr. McCarthy, in his words, acted as "a heavy-handed guardian of the property" and, as he later admitted, "a pseudo-guardian of the person" (presumably, he meant "quasi-guardian"). He hired Ms. Felice Grunberger, a social worker, to act as his "private case manager" and to make sure that Ms. Rosenberg's needs were addressed.

While Mr. McCarthy saw the guardianship as indefinite, Ms. Rosenberg did not. In her view, the arrangement was temporary and solely one that applied to her property and not her person. In fact, she claimed that when she discussed the matter with Ms. Rochvarg, she was advised by her that it "should take about three months to recover and then [they] could have the guardianship dismissed."

After Ms. Rosenberg was discharged from Suburban Hospital, she was admitted to a rehabilitation hospital and then a nursing home and, after that, an assisted-living facility. The following year, as Ms. Rosenberg's condition gradually improved, it was agreed that she would move to an apartment in Washington, D.C. Mr. McCarthy signed the lease for Ms. Rosenberg. Assisted by Ms. Grunberger, as well as an aide, who visited three days a week, four or five hours at a time, Ms. Rosenberg began living in the apartment in July 2010. Ms. Grunberger, among other things, monitored Ms. Rosenberg's medications, as she was then taking eight different medications for various illnesses,[3] and the aide helped her to shop for groceries and to perform such routine chores as preparing meals, grooming, bathing, and dressing.

At some point, Ms. Rosenberg felt she was now capable of living on her own. Mr. McCarthy felt otherwise. In a letter

---

3. According to the report filed by Patricia T. Nay, M.D., the independent medical examiner, Ms. Rosenberg was also suffering from mild depression, narcissism, constipation, unstable gait, multiple falls, hand deformities, and self neglect.

to "interested persons," [4] dated August 2, 2010, Mr. McCarthy wrote that the move to the Washington, D.C., apartment would, in his view, "be a complete disaster," as Ms. Rosenberg both lacked "the capacity to organize her own affairs" and suffered from "very poor judgment." Ms. Rosenberg could live independently, he opined, but it would require the help of "twenty-four hour aides" at a prohibitive cost.

Predictably, Ms. Rosenberg had an entirely different view of her capabilities. Asserting that she was now able to handle the challenge of independent living, she urged Mr. McCarthy to seek a review hearing before the circuit court for the purpose of determining whether the guardianship should be terminated, and, thereafter, he filed a motion to set a review hearing "for the possible modification and/or termination" of her guardianship. A hearing was held, at Mr. McCarthy's request, on July 27, 2010. At that time, the circuit court, at Mr. McCarthy's suggestion, appointed Patricia T. Nay, M.D., to perform an independent medical evaluation of Ms. Rosenberg to "determine" if she had "recovered from the disability requiring [the] imposition" of the guardianship "to an extent" that it was now "appropriate" to terminate that guardianship. Upon making that appointment, the court ordered that, after Dr. Nay's report was completed, a hearing be held on Ms. Rosenberg's motion to terminate guardianship. The court then declared that, at that hearing, Dr. Nay's report would be admitted as substantive evidence and that no testimony from Dr. Nay or any other person need be taken, though, it added, Dr. Nay could be "subpoenaed by any party."

---

**4.** "Interested person" is defined as "the guardian, the heirs of the minor or disabled person, any governmental agency paying benefits to the minor or disabled person, or any person or agency eligible to serve as guardian of the disabled person under § 13–707 of this title." ET § 13–101(j); *see also* Md. Rule 10–103(f) (providing a broader definition which includes "the minor or the disabled person"). In the instant case, the interested persons, to whom Mr. McCarthy addressed the August 2nd letter, included Ms. Grunberger; Ms. Rochvarg; the adult children of Ms. Rosenberg: Ms. Lili Rosenberg and Mr. Jonah Rosenberg; as well as counsel representing Suburban Hospital, Mr. Timothy B. Adelman, Esquire.

In late September 2010, four weeks before the scheduled hearing, Dr. Nay submitted her independent medical evaluation. In the summary of that report, Dr. Nay opined:

Mrs. Rosenberg has dementia secondary to Parkinson's disease and self neglect. She has impaired executive functioning. Her overall situation is exacerbated by her narcissism.

She can make and communicate only simple and limited decisions concerning her person and property.

She requires a guardian of property and a guardian of person.

She requires 24–hour supervision in a structured environment at this time to keep her safe and meet her needs. If that is her apartment, then she requires 24–hour private duty caregivers.

She does not have the mental capacity to understand the nature of a guardianship of person or property and cannot consent to the appointment of a guardian.

Several days after the submission of that evaluation, Ira E. Zimmerman, Esquire, entered his appearance on behalf of Ms. Rosenberg, and, shortly thereafter, at the scheduled motions hearing, he indicated that he wanted to call Dr. Hyde to the stand. To enable him to do so, the hearing was then rescheduled for January 4, 2011. At that hearing, Dr. Hyde opined that, although Ms. Rosenberg "has some cognitive limitations," they do not "rise to the level of incompetency" and that she does not presently suffer from dementia. Rather, in Dr. Hyde's view, Ms. Rosenberg's "poor judgment is not any worse than multiple people in our society who are deemed not to be incompetent." He did caution, however, "that she needs assistance" and that she should "maintain the aide . . . and the case worker."

Cheryl Floyd, Esquire, a trial attorney employed by the United States Department of Justice and a friend of Ms. Rosenberg for nearly thirty years, also testified at the hearing. Ms. Floyd stated that she would be willing to serve as attorney-in-fact for Ms. Rosenberg, "in the event that Ms.

Rosenberg was hospitalized or for some other reason could not continue to handle her finances." She declined, however, to offer to serve as a guardian of Ms. Rosenberg's property.

At the conclusion of the January 4th hearing, the circuit court denied Ms. Rosenberg's motion to terminate the guardianship of her property, observing that, as it was not considering "whether to establish a guardianship" but only whether to terminate one, it was not required to apply a clear and convincing evidence standard. It then said that its decision was "controlled by the statute," that is, § 13–221 of the Estates and Trusts Article, which merely required it to determine "whether there has been a cessation of the disability." And, in making that determination, the circuit court asserted that it should consider "what is in the best interest of Ms. Rosenberg."

After hearing the testimony of Dr. Hyde and considering the report of Dr. Nay, the independent medical examiner, the court thus stated that it did not "have some comfort and reliance that [Ms. Rosenberg] is indeed in a position to manage her affairs and to manage her property" and denied Ms. Rosenberg's request to terminate the guardianship. This appeal followed.

## Discussion

At the outset, we note what is and what is not at issue before us. Ms. Rosenberg raises several contentions of error, based upon her interpretation of the Maryland statutory scheme addressing guardianships of property, namely, Title 13, Subtitle 2 of the Estates and Trusts Article. She does not, however, contend that that statutory scheme violates her constitutional right to due process of law. Consequently, our analysis shall focus on statutory (and rule) interpretation, and we will refrain from exploring in detail any due process issues.

### I.

■ Ms. Rosenberg contends that the circuit court erred in failing to require Mr. McCarthy, the guardian of her property, to prove, by clear and convincing evidence, that the guardian-

ship of her property should be continued. Although Maryland Code, § 13–221 of the Estates and Trusts Article ("ET"), is, in her words, "silent as to the standard of proof and as to who bears the burden of persuasion," she maintains that *In re Lee*, 132 Md.App. 696, 714, 754 A.2d 426 (2000), is not.

In that case, this Court declared that, before a guardianship of the person may be imposed, the petitioner must establish by clear and convincing evidence the "need" for such a guardianship. *Id.* at 714, 754 A.2d 426. The same standard, Ms. Rosenberg maintains, should be imposed on the party (in this case Mr. McCarthy) seeking to continue the guardianship. We disagree.

Termination of a guardianship of property falls under ET § 13–221, which provides:

(a) Petition to terminate.—The minor or disabled person, his personal representative, the guardian, or any other interested person may petition the court to terminate the guardianship proceedings.

(b) Cause for termination.—A guardianship proceeding shall terminate upon:

(1) The cessation of the minority or disability;

(2) The death or presumptive death of the minor or disabled person;

(3) Transfer of all the assets of the estate to a foreign fiduciary; or

(4) Other good cause for termination as may be shown to the satisfaction of the court.

(c) Rights and procedures.—Termination and final distribution of the estate of a former minor or disabled person shall be made in compliance with the provisions of the Maryland Rules, applying to a fiduciary.

ET § 13–221.[5]

This statute simply states that the "minor or disabled person, his personal representative, the guardian, or any other

---

5. Mr. McCarthy states, in his brief, that ET § 13–221 applies to termination of guardianships of both property and person. Not only is that

interested person may petition the court to terminate the guardianship proceedings" and that a guardianship "shall terminate" upon the occurrence of any of a list of triggering events, which includes the "cessation of the disability." *Id.* § 13–221(a)–(b). Subsection (b)(4), a catch-all provision, states that a guardianship shall terminate upon "[o]ther good cause for termination as may be shown to the satisfaction of the court."

In the context of a revocation of probation hearing, which, like the case at bar, "is a civil proceeding," *Gibson v. State,* 328 Md. 687, 690, 616 A.2d 877 (1992), the Court of Appeals has held that "references in our decisions to the reasonable satisfaction of the trial court mean that the trial judge must find the essential facts ... by a preponderance of the evidence." *Wink v. State,* 317 Md. 330, 340–41, 563 A.2d 414 (1989).

Although the "satisfaction of the court" language appears only in subsection (b)(4), which might suggest that it is applicable only to that subsection, we have no reason to conclude that a different quantum of evidence would apply to subsections (1) through (3). *Henriquez v. Henriquez,* 413 Md. 287, 297, 992 A.2d 446 (2010) (observing that "court may

---

assertion inconsistent with the placement of the termination statute within the subtitle dealing with guardianships of property, it ignores the language in ET § 13–708(b)(7) (where, unfortunately, it is well-hidden, as the statute is titled, "Rights, duties, and powers of guardian"):

The [guardian has the] duty to file an annual report with the court indicating the present place of residence and health status of the ward, the guardian's plan for preserving and maintaining the future well-being of the ward, and the need for continuance or cessation of the guardianship or for any alteration in the powers of the guardian. The court shall renew the appointment of the guardian if it is satisfied that the grounds for the original appointment stated in § 13–705(b) of this subtitle continue to exist. If the court believes such grounds may not exist, it shall hold a hearing, similar to that provided for in § 13–705 of this subtitle, at which the guardian shall be required to prove that such grounds exist. If the court does not make these findings, it shall order the discontinuance of the guardianship of the person. If the guardian declines to participate in the hearing, the court may appoint another guardian to replace him pursuant to the priorities in § 13–707(a) of this subtitle[.]

neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application") (citations omitted). Indeed, it is fair and reasonable to assume that the "satisfaction of the court" standard enunciated in subsection (b)(4) was intended to apply to all four subsections, and we so hold.

We find further support for this interpretation in *Wink*, 317 Md. at 338, 563 A.2d 414 (emphasis added), where the Court of Appeals said: "Here, **as in civil cases generally,** [the legally requisite] degree [of persuasiveness] is only that the fact finder conclude that the existence of the fact sought to be proved is more likely than unlikely." In other words, the general rule in civil cases is that a matter at issue must be proved by a preponderance of the evidence, *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), and nothing in ET § 13–221 states or even suggests otherwise.

Moreover, we must assume that, if the General Assembly had intended that a clear and convincing standard was to apply to a question whether a guardianship of the property should be terminated, it would have said so, as it did when it addressed the appointment and the termination of a guardianship of the person. *Compare* ET § 13–221 (termination of guardianship of property) *with* ET § 13–705 [6] (appointment of

---

**6.** ET 13–705, governing appointment of guardians of the person, provides in part:

(a) On petition and after any notice or hearing prescribed by law or the Maryland Rules, a court may appoint a guardian of the person of a disabled person.

(b) A guardian of the person shall be appointed if the court determines from **clear and convincing evidence** that a person lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person, including provisions for health care, food, clothing, or shelter, because of any mental disability, disease, habitual drunkenness, or addiction to drugs, and that no less restric-

guardian of person) *and* ET § 13–708(b)(7) [7] (termination of guardianship of person) (providing for "hearing, similar to that provided for in § 13–705 of this subtitle"). The absence of such language in ET § 13–221 leaves us to conclude that the evidentiary standard for terminating a guardianship of property is a preponderance of the evidence and not clear and convincing evidence, even though we confess that, on occasion, and some would suggest even more often than that, a guardianship of the property amounts to a guardianship of the person. As Ms. Rosenberg has not raised any constitutional challenge to the Maryland statutes concerning guardianships of property, we simply have no basis upon which to read a "clear and convincing" standard into ET § 13–221.

■ We turn now to consider who, that is, which party bears the burden of proof, in a proceeding to terminate a guardianship of property. Subsection (c) of ET § 13–221 instructs that termination "shall be made in compliance with the provisions of the Maryland Rules, applying to a fiduciary," that is, Title 10 of the Maryland Rules.

---

tive form of intervention is available which is consistent with the person's welfare and safety.

\* \* \*

(Emphasis added.)

**7.** ET 13–708, governing the rights, powers, and duties of a guardian of the person, provides in part:

The [guardian of the person has the] duty to file an annual report with the court indicating the present place of residence and health status of the ward, the guardian's plan for preserving and maintaining the future well-being of the ward, and the need for continuance or cessation of the guardianship or for any alteration in the powers of the guardian. **The court shall renew the appointment of the guardian if it is satisfied that the grounds for the original appointment stated in § 13–705(b) of this subtitle continue to exist. If the court believes such grounds may not exist, it shall hold a hearing, similar to that provided for in § 13–705 of this subtitle, at which the guardian shall be required to prove that such grounds exist.** If the court does not make these findings, it shall order the discontinuance of the guardianship of the person. If the guardian declines to participate in the hearing, the court may appoint another guardian to replace him pursuant to the priorities in § 13–707(a) of this subtitle[.] *Id.* § (b)(7) (emphasis added).

When we turn to Title 10, we find, in Rule 10–305, that a "guardianship of the property shall be administered pursuant to Rules 10–702 through 10–712." Among those procedural precepts is a rule governing the termination of a fiduciary estate: Rule 10–710. It provides in part:

> (b) Time for Filing–Who May File. Within 45 days after the fiduciary discovers that the grounds for termination exist, the fiduciary shall file a petition requesting the court to terminate the estate. Thereafter, if the fiduciary has not timely filed the petition, an interested person may file a petition requesting the court to terminate the estate.

> \* \* \*

> (d) Contents. The petition shall be signed and verified by the petitioner and shall contain the following information:
>
> (1) the petitioner's interest in the estate;
>
> (2) the name and address of each interested person entitled to notice of the petition;
>
> (3) a statement of facts establishing the grounds for termination; and
>
> (4) documentation as set forth in this Rule.
>
> (e) Documentation.

> \* \* \*

> (3) Medical Certificate. If the cause for the termination of the guardianship of the property of a disabled person is the cessation of the disability, the petitioner shall file with the petition a certificate, signed by a physician who has examined the person within 21 days of the filing of the petition, attesting to the cessation of the disability.

> \* \* \*

It is clear that neither ET § 13–221 nor Rule 10–710 specify who bears the burden of proof.[8] Although the Supreme Court

---

8. ET § 13–201, which governs the appointment of a guardian of property, is equally silent as to who bears the burden of proof, providing merely that such a guardian "shall be appointed if the court determines that" the alleged disabled person "is unable to manage his property and

has held that, when the "plain text" of a statute "is silent on the allocation of the burden of persuasion," it "begin[s] with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims," *Schaffer v. Weast*, 546 U.S. 49, 56, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005), it has also said that this "ordinary default rule ... admits of exceptions." *Id.* at 57, 126 S.Ct. 528.

We think that such an exception should apply here, as a guardianship of property is a substantial interference with a ward's liberty interest. Specifically, ET § 13–213 provides that "[a]ll the provisions of § 15–102 of this article with respect to the powers of a fiduciary and the manner of exercise of those powers are applicable to a guardian [of property]." Then, turning to ET § 15–102, we find that a guardian of property, as a fiduciary, has very broad powers over a ward's property, including, to name just a few, the power to "invest in, sell, mortgage, exchange, or lease any property, real or personal"; to borrow money; to retain any assets owned by the ward; to "receive assets from any sources"; to deposit funds for the ward's account; to "sell or exercise stock subscription, conversion or option rights" and to vote securities; and to "exercise any inter vivos power which the minor or disabled person could have exercised under an instrument, including the power to sell, mortgage, or lease." *Id.* § (c), (d), (f), (g), (j), (k), (n), (x). Thus, a ward, under a guardianship of property, suffers a substantial diminution of liberty.

Rule 10–710, however, suggests the course we should follow. Subsection (e)(3) of that rule requires that the petitioner wishing to terminate a guardianship of property on the grounds that the disability, which justified the imposition of that guardianship, has ceased or, as in this case, substantially diminished, file "a certificate, signed by a physician who has

---

affiliate effectively because of physical or mental disability, disease, habitual drunkenness, addiction to drugs, imprisonment, compulsory hospitalization, confinement, detention by a foreign power, or disappearance" and that he "has or may be entitled to property or benefits which require proper management." *Id.* § (c)(1)-(2).

examined the person within 21 days of the filing of the petition, attesting to the cessation of the disability." We hold that, once the ward satisfies this provision, the burden of proof shifts to the guardian to establish, by a preponderance of the evidence, that the disability has not ceased and that, if the guardian does not meet this burden, the court should order that the guardianship of property be terminated. Such a burden-shifting is "particularly appropriate ... where the guardianship," as here, "was voluntarily imposed with no contested hearing." *In re Hedin*, 528 N.W.2d 567, 581 (Iowa 1995).[9]

## II.

■ Ms. Rosenberg next contends that the circuit court erred in not considering a less restrictive alternative to guardianship of her property. In support of this claim, Ms. Rosenberg directs our attention to ET § 13–705, the statute governing the appointment of a guardian of the person. Admittedly, that statute does require a circuit court to explore less restrictive alternatives to appointment of a guardian of the person. *Id.* § (b). But, ET § 13–201,[10] the statute governing the

---

9. We acknowledge that *In re Hedin*, 528 N.W.2d 567 (Iowa 1995), addressed a guardianship of the person. But the Iowa legislature, shortly after *Hedin* was decided, amended that state's probate code so as to impose the burden of proof on the party seeking to impose both guardianships and conservatorships (corresponding to, respectively, guardianships of person and of property). As to termination proceedings, whether of guardianships or conservatorships, the amended probate statutes imposed the same burden-shifting procedure we have just outlined. 1997 Iowa Acts ch. 178.

10. Section 13–201 of the Estates and Trusts Article, governing the appointment of a guardian of the property, provides in part:

§ 13–201. Appointment of guardian
(a) Petition and notice.—Upon petition, and after any notice or hearing prescribed by law or the Maryland Rules, the court may appoint a guardian of the property of a ... disabled person.

\* \* \*

(c) Disabled persons.—A guardian shall be appointed if the court determines that:

appointment of a guardian of the property, and ET § 13–221, governing termination of such a guardianship, do not. Thus, there is no statutory requirement that a circuit court consider any less restrictive alternatives to a guardianship of the property, and the court below did not err in failing to do so.

We observe, however, that nothing in ET §§ 13–201 and 13–221 prohibits a circuit court from considering less restrictive alternatives to a full and complete guardianship of property, and a court would certainly not abuse its discretion in so doing. We feel impelled to further note that, in contrast to Maryland, the courts, in some states, are expressly required by statute to consider less restrictive alternatives, when imposing guardianships of property. *See, e.g.,* Iowa Code § 633.570(2) (requiring, in "all proceedings to appoint a conservator," that the court "shall consider the functional limitations of the person and whether a limited conservatorship, as authorized in section 633.637, is appropriate"); Mass. Gen. Laws ch. 190B, § 5–404(c)(3) (requiring petition requesting appointment of conservator to state "the type of conservatorship requested, and if a general conservatorship, the reason why a limited conservatorship is inappropriate, and if a limited conservatorship, the powers to be granted to the limited conservator or property to be placed under the conservator's

---

(1) The person is unable to manage his property and affairs effectively because of physical or mental disability, disease, habitual drunkenness, addiction to drugs, imprisonment, compulsory hospitalization, confinement, detention by a foreign power, or disappearance; and

(2) The person has or may be entitled to property or benefits which require proper management.

In contrast, ET § 13–705(b), governing the appointment of a guardian of the person, provides:

(b) Grounds.—A guardian of the person shall be appointed if the court determines from clear and convincing evidence that a person lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person, including provisions for health care, food, clothing, or shelter, because of any mental disability, disease, habitual drunkenness, or addiction to drugs, **and that no less restrictive form of intervention is available which is consistent with the person's welfare and safety.**

(Emphasis added.)

control"); N.M. Stat. § 45–5–407(J) (providing in part that a "court shall appoint a limited conservator if it determines that the incapacitated person is able to manage some but not all aspects of his estate and financial affairs" and that it "shall specify those powers that the limited conservator shall have and may further restrict each power so as to permit the incapacitated person to care for his estate and financial affairs commensurate with his ability to do so"); Tenn.Code § 34–1–127 (as to both guardianships and conservatorships, providing that a "court has an affirmative duty to ascertain and impose the least restrictive alternatives upon the disabled person that are consistent with adequate protection of the disabled person and the disabled person's property").

## III.

■ Because we cannot say, based upon the record, that the circuit court required the guardian, Mr. McCarthy, to shoulder the burden of proof, we vacate the court's order refusing to terminate the guardianship of property and remand for a new hearing, in accord with this opinion and with Rule 10–710. For guidance, we make several observations.

First, it appears that the proceedings were more informal than contemplated by Rule 10–710. There was no petition filed, but simply the ward's "request" to terminate the guardianship of her property, and Ms. Rosenberg did not file a medical certificate, under Rule 10–710(c), failings that may be attributable to the fact that the guardian both made the request and thereafter opposed it. The guardian did not object to the failure to precisely comply with Rule 10–710(c), as he in fact made the request, and, in light of the informality of the proceedings below, we could reasonably construe Dr. Hyde's testimony, urging that Ms. Rosenberg did not "need" guardianship, as substantially complying with the rule.

■ As to Ms. Rosenberg's assertion that the lower court inappropriately imported into this matter a standard from family law, the "best interest" standard, we concede that the circuit court did consider "what [was] in the best interest of"

Ms. Rosenberg, in deciding whether to continue the guardianship of her property, but we note that a guardian of the property is required to "utilize powers conferred ... to perform the services, exercise his discretion, and discharge his duties for **the best interest of the** ... **disabled person**...." ET § 13–206(c)(1) (emphasis added).

Because, as the Court of Appeals observed in *Kicherer v. Kicherer,* 285 Md. 114, 118, 400 A.2d 1097 (1979), "[i]n reality the court is the guardian; an individual who is given that title is merely an agent or arm of that tribunal in carrying out its sacred responsibility," the court properly considered the "best interest" of Ms. Rosenberg, which the guardian was statutorily mandated to do, and the court's fleeting observation, that "this is a standard [from] family law," did not mean that the court engaged in an improper importation of an inappropriate standard.

**ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; EACH PARTY TO BEAR ITS OWN COSTS.**