754 A.2d 426

**In re Sonny E. LEE.**

**No. 2214, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

June 28, 2000.

**698**

Norman C. Usiak, Frederick, for appellant.

Maura C. Fisher (G. Randall Whittenberger and Miles & Stockbridge P.C., on the brief), Frederick, for appellee.

Argued before KENNEY, KRAUSER and THEODORE G. BLOOM (Retired, specially assigned), JJ.

KRAUSER, Judge.

This is an appeal from a Final Order of Guardianship issued by the Circuit Court for Frederick County, appointing appellee, Sonya R. Lee (Sonya), the guardian of the person and property of her father, Sonny E. Lee (Sonny). Appellant Shannon T. Lee (Shannon) noted this appeal, challenging both the findings of that court and the appointment of his sister, Sonya, as guardian. Five issues are presented for our review:[1]

---

1. Appellant also contends that the trial judge erred in refusing to recuse himself upon request of appellant to do so because of an alleged bias in

I. Whether the circuit court erred in declaring Sonny E. Lee a person under a disability and in need of a legal guardian without holding a hearing on that issue.

II. Whether the circuit court erred in denying appellant's request that the two doctors, who had prepared the physician certificates of the guardianship petition and were in court pursuant to appellant's request under Maryland Rule 10–205(b)(1), be permitted to testify at trial.

III. Whether Sonny E. Lee was afforded the legal representation required by Maryland law and the Rules of Professional Conduct.

IV. Whether the circuit court erred in appointing appellee as guardian of the person and property of Sonny E. Lee.

V. Whether the circuit court erred in issuing the protective order that precluded appellant from deposing Sonny E. Lee and in quashing appellant's subpoena for Sonny E. Lee to appear and testify at trial.

In addition to the issues raised by appellant, appellee contends that appellant does not have standing to assert the rights of Sonny E. Lee, the person alleged to be under a disability, on appeal. For the reasons that follow, we shall hold that he does.

Furthermore, we shall reverse the judgment of the Circuit Court for Frederick County on the following grounds: First, the trial court erred in failing to hold a hearing on the question of whether the alleged disabled person, Sonny E. Lee, was presently under a disability and in need of a full guardianship. Second, the trial court erred in denying appellant's request that the two doctors who had prepared the physician certificates of the guardianship petition, and who

---

favor of Sonny's court appointed counsel. Because appellant presented no evidence of judicial bias at the hearing below nor presented any argument in support of this contention in this appeal, we will not consider this issue.

were in court pursuant to appellant's request under Maryland Rule 10–205(b)(1), be permitted to testify at trial. And third, Sonny, the alleged disabled person, was not provided with adequate legal representation from the inception of the guardianship proceedings to their conclusion. Because we are reversing the judgment of the circuit court based on the first three issues presented by appellant and remanding this case to that court for further proceedings consistent with this opinion, we shall not reach the remaining issues presented by appellant.

## Facts

Sonny E. Lee, the adult subject of the instant guardianship proceeding, was born on August 4, 1938 and is 62 years old. He was previously employed as a maintenance supervisor at both the National Bureau of Standards and the Department of Commerce. In 1961, he married Barbaria Ann Lee. They had three children: Sonya R. Lee, appellee; Shannon T. Lee, appellant; and Dorian Nicole Lee (formerly Derek E. Lee).

Sonny has been an alcoholic for most of his adult life. Over the course of many years, he has been treated for his alcoholism at various rehabilitation facilities without success. In 1986, Sonny and Barbaria divorced, and Sonny moved into his mother's home in Frederick County. His drinking problems, however, persisted, and he was frequently found wandering the streets of Frederick inebriated. On September 2, 1993, Sonny executed a general power of attorney, naming his daughter, Sonya, as his attorney-in-fact. Its principal purpose, according to Sonny, was to enable Sonya to assist him in obtaining a portion of his deceased brother's estate. Among other things, it also directed that Sonya be appointed as his guardian if a guardianship became necessary.

In late 1997 or early 1998, Sonny was hospitalized after passing out in a park in Frederick County. He was "very ill" and unable to walk or use his hands. In April of 1998, Sonya arranged for Sonny to be admitted to the College View Nursing Home in Frederick, Maryland to receive the care and

treatment he needed. Since his placement at that nursing home, Sonny has not consumed any alcohol.

## Guardianship Proceedings

On November 25, 1998, Sonya filed a Petition for the Appointment of a Guardian of the Person and Property of Sonny E. Lee in the Circuit Court for Frederick County. *See* Maryland Code (1974, 1991 Repl.Vol., 1998 Supp.), § 13–705(a) of the Estates and Trusts Article (ET); Maryland Rule 10–201.[2] In that petition, she alleges that her father

> is a person under disability in that he lacks sufficient understanding and capacity to make responsible decisions concerning his person, including provisions for his health care, food, clothing and shelter, and that he lacks sufficient understanding and capacity to manage his property and affairs, due to mental disability, disease and habitual drunkenness.[3]

In support of that petition, she attached the certificates of two physicians, Lloyd Halvorson, M.D., the medical director of College View Nursing Home, and Andrew Zarick, M.D., her father's attending physician. *See* Md. Rule 10–202(a)(1).[4]

---

**2.** Section 13–705(a) of the Estates and Trusts Article, states that "[o]n petition and after any notice or hearing prescribed by law or the Maryland Rules, a court may appoint a guardian of the person of a disabled person." Maryland Rule 10–201 governs petitions for guardianship of an allegedly disabled person.

**3.** The language of that petition tracks the language of ET § 13–705(b), which states:

> A guardian of the person shall be appointed if the court determines from clear and convincing evidence that a person lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person, including provisions for health care, food, clothing, or shelter, because of any mental disability, disease, habitual drunkenness, or addiction to drugs, and that no less restrictive form of intervention is available which is consistent with the person's welfare and safety.

**4.** Maryland Rule 10–202(a)(1) states, in part:

> Generally. If guardianship of the person of a disabled person is sought, the petitioner shall file with the petition signed and verified certificates of (A) two physicians licensed to practice medicine in the

The two doctors certified that Sonny suffered from dementia and therefore lacked "sufficient capacity to consent to the appointment of a guardian, or to make or communicate responsible decisions concerning his medical treatment or person."[5] Sonya filed with that petition the general power of attorney designating her as Sonny's attorney-in-fact, a notice to interested persons,[6] a notice of advice of rights to Sonny,[7] and a motion for the appointment of an attorney for Sonny.[8]

United States who have examined the disabled person, or (B) one licensed physician who has examined the disabled person and one licensed psychologist who has seen and evaluated the disabled person.... Each certificate shall state the name, address, and qualifications of the physician or psychologist, a brief history of the physician's or psychologist's involvement with the disabled person, the date of the physician's last examination of the disabled person or the psychologist's last evaluation of the disabled person, and the physician's or psychologist's opinion as to: (1) the cause, nature, extent, and probable duration of the disability, (2) whether the person requires institutional care, and (3) whether the person has sufficient mental capacity to understand the nature of and consent to the appointment of a guardian.

5.  Doctor Zarick's certificate also lists prostate cancer as a basis for his conclusion that Sonny needed a guardian.

6.  Maryland Rule 10–203(b)(2) requires that all interested persons be notified of the guardianship matter. " 'Interested person' means the guardian, the heirs of the minor or disabled person, any governmental agency paying benefits to the minor or disabled person, or any person or agency eligible to serve as guardian of the disabled person under § 13–707 of this subtitle...." ET § 13–101(j); *see also* Maryland Rule 10–103(f). Maryland Rule 10–203(c) governs the form and content of notice that petitioner must provide interested persons. The rule permits, among other things, interested persons to object to the appointment of a guardian or otherwise participate in the proceedings.

7.  Maryland Rule 10–203(a) requires that the alleged disabled person be advised of his or her rights before a guardian is appointed. Maryland Rule 10–204 provides the form for an advice of rights that is served on the alleged disabled person.

8.  The law requires the court to appoint an attorney for the alleged disabled person if he or she is not represented by counsel. *See* ET § 13–705(d) (providing, in part, that "unless the alleged disabled person has counsel of his own choice, the court shall appoint an attorney to represent him in the proceeding"); *see also* Maryland Rule 10–106(a) (cross referencing, *inter alia*, § 13–705(d) of the Estates and Trusts Article and directing attention to "Rule 1.14 of the Maryland Lawyers'

On December 4, 1998, the circuit court issued an order appointing an attorney to represent Sonny in the pending guardianship proceeding and an order requiring Sonny and the interested persons named therein, Shannon Lee, Dorian Lee, and the Social Security Administration, to "show cause . . . why the relief sought in the aforegoing Petition should not be granted." *See* Md. Rule 10–104.[9]

On January 19, 1999, Shannon filed an "Objection to the Appointment of Sonya R. Lee as Guardian of the Person and Property of Sonny E. Lee." In that objection, Shannon did not expressly question Sonny's alleged disability or the need for a guardian. Instead, he challenged his sister's fitness to serve as their father's guardian. He requested, among other things, that a hearing be scheduled "to determine the best arrangement for the protection" of Sonny; and that he "be considered for appointment" as Sonny's sole guardian or co-guardian. Challenging Sonya's fitness to serve as Sonny's guardian, Shannon claimed that Sonya had misappropriated some of Sonny's funds and otherwise mishandled Sonny's affairs and those of their maternal grandmother, Harriet Eleanor Bell. His brother, Dorian, joined in the objection and provided an affidavit stating that, among other things, Sonya is not a "trustworthy person" and "is very manipulative and greedy." Sonny's former wife, Barbaria, provided a similar affidavit.

Sonny's attorney answered the petition for guardianship and the show cause order on March 11, 1999. In that answer, she stated that she would file "shortly a Report to the Court upon the conclusion of her investigation into this matter on behalf of [Sonny] making a recommendation regarding the best inter-

---

Rules of Professional Conduct with respect to the attorney's role and obligation").

9. Maryland Rule 10–104 requires the court to issue a show cause order in adult guardianship matters that are not proceeding on an emergency basis. Maryland Rule 10–203 requires the petitioner to serve the show cause order on the alleged disabled person, the attorney for the alleged disabled person, and all interested persons, unless the court orders otherwise.

ests of [Sonny] in this proceeding." She also asked that the matter be set for a hearing and, in a separate document, waived Sonny's right to a jury trial. *See* Md. Rule 10–205(b)(1).[10]

Prior to trial, appellant's attorney made several efforts to interview Sonny. *See* Md. Rule 10–102(b).[11] He had received information, presumably from Shannon, that Sonny "was indicating dissatisfaction with the present situation, as far as guardianship." At the end of June, according to appellant's attorney, Sonny's counsel had agreed to make Sonny available for an interview. Later, however, she changed her mind and sent a letter dated July 1, 1999, to appellant's attorney, notifying him that Sonny would not be available for an interview and suggesting that he "either note Mr. Lee's deposition or propound Interrogatories upon him."

On August 2, 1999, notwithstanding her suggestion to Shannon's counsel that he depose Sonny, Sonny's attorney filed a motion for a protective order to prevent him from doing precisely that. On August 18th, 1999, the circuit court granted this motion and issued the protective order requested. The next day Shannon filed a request that all of Sonny's physicians appear and testify at the trial of this matter and issued a subpoena for Sonny to appear and testify as well. *See* Md. Rules 10–203(c) and 10–205(b)(1).[12]

---

**10.** Maryland Rule 10–205(b)(1) permits the alleged disabled person or the attorney appointed to represent the alleged disabled person to waive a jury trial.

**11.** Maryland Rule 10–102(b) provides that "[a]ny interested person may obtain discovery in a contested matter pursuant to Title 2, Chapter 400 of these Rules, unless otherwise ordered by the court. Except as otherwise provided in this Title, a court may apply any of the rules in Title 2 as appropriate."

**12.** Maryland Rule 10–203(c), requires, in part, that interested persons be notified that "[a] physician's or psychologist's certificate attached to the petition will be admissible as substantive evidence without the presence or testimony of the physician or psychologist unless [an interested person] file[s] a request that the physician or psychologist appear."

On September 1, 1999, the day before trial, Sonny's attorney submitted her report to the court. Her investigation included "a thorough review of all of the pleadings, discovery and other documents filed [in this matter], interviews with all parties, interviews with all relevant nursing home staff and personnel ... [and] numerous meetings with Sonny E. Lee." The report states that both Sonya and Shannon are "genuinely concerned about the health, welfare and well-being of [their] father." But, because of the animosity between them, a joint guardianship was not in Sonny's best interest. The report further asserts that "there is no less restrictive form of intervention available in this matter at the present time consistent with Sonny E. Lee's welfare and safety than the appointment of a Guardian of his Person and Property." The report concludes that Sonya "is clearly the most qualified individual at this time to be appointed as Guardian" and that she "has established not only her willingness to serve in that position but has shown that she has only Mr. Lee's best interests at heart."

Sonny's attorney also filed a motion to quash appellant's subpoena for Sonny. In that motion, she stated that "it would be exceedingly harmful to Sonny E. Lee's current physical and mental health to be compelled to testify." *See* ET § 13–705(e).[13] The circuit court quashed that subpoena the same day.

A trial of this matter began in the Circuit Court for Frederick County on September 2, 1999. Before testimony was taken, Shannon's counsel asked the presiding judge to recuse himself because of an alleged bias in favor of Sonny's court appointed counsel. That request was denied.

Appellant's counsel also protested the denial of his request to depose Sonny and the quashing of the subpoena he had issued for Sonny to appear at trial. He stated that Sonny

---

**13.** Section 13–705(c) of the Estates and Trusts Article provides, in part, that "[t]he person alleged to be disabled is entitled to be present at the hearing unless he has knowingly and voluntarily waived the right to be present or cannot be present because of physical or mental incapacity."

"would like the opportunity to have the court view him as to whether or not he is disabled" and wanted to testify, but Sonny's attorney had "frustrated [Sonny's] attempts to speak" on his own behalf. Then, upon close questioning by the court, appellant's counsel stated that his client was contesting the need for a guardian but, if the court determined that Sonny was in need of a guardian, then appellant wished to assume that role.

The court nonetheless ruled that competency was not at issue because Shannon had failed to contest the appointment of a guardian for Sonny in the objection that he had filed. The court stated: "What is before the Court today for decision is who is to be the guardian of Mr. Sonny Lee. And that's what we will hear testimony on." The court then excused from testifying Doctors Halvorson and Zarick, the physicians who had certified that Sonny was in need of a permanent guardian, and Saeed Zaidi, M.D., Sonny's then current attending physician; all of whom were present and prepared to testify. *See* Md. Rule 10–205(b)(1).[14]

At the request of Sonny's attorney, the court agreed to hold an in-chambers, but on the record, conference with counsel. At that conference, the court learned from her that Sonny not only wished to testify but was preparing to come to court that day to do so at, what his attorney believed to be, the urging of appellant. The court directed that if Sonny was alert and lucid he should be brought to court to testify but only on the issue of who should serve as his guardian and not whether a guardian should be appointed.

---

**14.** Maryland Rule 10–205(b)(1) provides, in part, that

"[a] physician's or psychologist's certificate is admissible as substantive evidence without the presence or testimony of the physician or psychologist *unless*, not later than 10 days before trial, an interested person who is not an individual under a disability, or the attorney for the alleged disabled person, *files a request that the physician or psychologist appear.*" (Emphasis added.)

*See also* Maryland Rule 10–203(c) (notifying interested persons that the certificates are admissible as substantive evidence unless a request is made that the physician or psychologist appear).

When the hearing resumed, Sonny was called to testify. Sonny successfully answered questions about his birthday, his children's names, his previous employment, his former wife, and other questions about his life. He was unable, however, to recall the dates of his marriage and divorce and could not remember attending certain meetings in 1993 concerning the power of attorney he eventually executed. Although he conceded that both Sonya and Shannon had his best interests at heart, he nonetheless stressed that he did not want either Sonya or Shannon to serve as his guardian. Sonny stated that "[i]t would be just hard feelings, like I'm taking his side or taking her side, then I got another son called Derek, and he think I be done turning my back on him. And the same with my ex-wife." Instead, he urged the court to appoint as his guardian Susan Puhala, a public defender who had apparently represented Sonny in the past. After concluding his testimony, Sonny was excused by the court over the objection of Shannon's counsel, who wanted him to stay for the remainder of the proceeding.

Pamela Taylor, a social worker at College View Nursing Home, testified that she had worked with Sonny since his admission to that nursing home in April of 1998. She stated that though his physical condition had slowly deteriorated, his cognitive abilities had improved. "He has periods where he fluctuates, some days are better than others," she explained. Sonny's attorney then objected, questioning the relevance of this testimony as the court had ruled that competency was no longer an issue. The court sustained that objection.

Sonya Lee then testified. She stated that she was thirty-eight years old and worked as a placement specialist for the District of Columbia public school system and as a part time advocate for the foster care system in the District of Columbia. She further stated that Sonny has had an alcohol problem for many years and that she placed him in the College View Nursing Home after his release from the hospital in 1998. Upon relating the circumstances leading to her appointment as Sonny's attorney-in-fact in 1993, she stated that, since that appointment, she has been managing his financial affairs.

She expressed concern, however, that on several occasions, she had been notified by her father's bank that he had entered the bank with another family member and attempted to withdraw money from his account while in an incoherent state. She indicated that she had considered other less restrictive alternatives to guardianship, but she believed that a guardianship would assist Sonny "with his decision making in reference to medical concerns and financial concerns." "My father is very ill," she explained, "and ... he's not able to make appropriate decisions all the time for himself in reference to his care and other issues that may occur." At the conclusion of Sonya's testimony on September 3, 1999, counsel for appellant made a motion to amend the pleadings and re-open the competency issue, which the court denied.

The trial was continued to September 10 and concluded on October 20, 1999. Barbaria and Dorian Lee testified. Their testimony was consistent with the affidavits they submitted with appellant's objection. Appellant also testified. During that testimony, he withdrew his request to be appointed guardian for his father. He requested, instead, that a third party be appointed, noting his father's preference for Susan Puhala.

On October 27, 1999, the circuit court issued its decision. After finding "from clear and convincing evidence, that Sonny E. Lee is a person under a disability under Maryland law, that [he] lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person, and that no less restrictive form of intervention is available," *see* ET § 13–705(b),[15] the court appointed Sonya the guardian of Sonny's person and property. *See* ET § 13–707.[16] From that order, Shannon noted a timely appeal.

---

15. *See* supra n. 3.

16. ET § 13–707 sets forth the priorities for the appointment of a guardian and, in part, provides:

(a) *Priorities.*—Persons are entitled to appointment as guardian of the person according to the following priorities:

## Standing

█ In her brief, appellee asserts that "it is questionable whether Shannon Lee even has standing" to assert Sonny's rights. We disagree.

█ To be sure, as a general rule, a person may not assert the constitutional rights of others. *Turner v. State*, 299 Md. 565, 571, 474 A.2d 1297 (1984). There are, however,

---

(1) A person, agency, or corporation nominated by the disabled person if the disabled person was 16 years old or older when the disabled person signed the designation and, in the opinion of the court, the disabled person had sufficient mental capacity to make an intelligent choice at the time the disabled person executed the designation;

(2) A health care agent appointed by the disabled person in accordance with Title 5, Subtitle 6 of the Health–General Article;

(3) The disabled person's spouse;

(4) The disabled person's parents;

(5) A person, agency, or corporation nominated by the will of a deceased parent;

(6) The disabled person's children;

(7) Adult persons who would be the disabled person's heirs if the disabled person were dead;

(8) A person, agency, or corporation nominated by a person caring for the disabled person;

(9) Any other person, agency, or corporation considered appropriate by the court;

(10) For adults less than 65 years old, the director of the local department of social services or, for adults 65 years old or older, the Secretary of Aging or the director of the area agency on aging, except in those cases where the department of social services has been appointed guardian of the person prior to age 65. Directors of local departments of social services and area agencies on aging, upon appointment as guardian, may delegate responsibilities of guardianship to staff persons whose names and positions have been registered with the court.

(b) *Waiver and substitution.*—A person specified in a priority in subsection (a)(2), (3), (5), or (6) may waive and nominate in writing a person, agency or corporation to serve in his stead. A nominee of a person holding priority has the same priority as the person making the nomination.

(c) *Selection by court.*—(1) Among persons with equal priority the court shall select the one best qualified of those willing to serve. For good cause, the court may pass over a person with priority and appoint a person with a lower priority.

(2) If a guardian of the estate has been appointed, the court may select him to be guardian of the person, regardless of priority.

exceptions to that rule. Notably, "[w]hen a relationship between a litigant and a third person is such that the enjoyment of the third person's rights are 'inextricably bound up with the activity the litigant wishes to pursue'; the litigant is 'very nearly, as effective a proponent of the right' as the third person; and the rights of the third person are likely to be ' "diluted or adversely affected," ' the general rule does not apply." *Id.* at 572, 474 A.2d 1297 (quoting *Singleton v. Wulff,* 428 U.S. 106, 115–16, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976)).

Initially, we note that appellant, as the son of the subject of a guardianship proceedings, is an "interested person" under Maryland law and has standing to participate, in his own right, in those proceedings. *See* ET § 13–101(j), *supra,* defining interested person. Moreover, the nature of the relationship between Sonny and appellant, as father and son, is such that appellant's rights to care for his father are "inextricably bound up" with his father's rights to receive that care. Equally important, Sonny has no other way to assert his rights but through his son. As he has been adjudged incompetent, he has lost the right to bring suit on his own behalf and the attorney appointed by the court to represent him has, to date, functioned principally as an arm of the court and is unlikely to seek approval to appeal the very outcome she sought on his behalf. In short, appellant is not only "as effective a proponent" of Sonny's rights as Sonny is, he is the only proponent of Sonny's rights. It therefore follows that, unless appellant is given standing to assert his father's rights, Sonny's rights "are likely to be 'diluted or adversely affected' " as he will have effectively lost his means and thus his right to appeal. Accordingly, we find that appellant has standing to assert Sonny's rights in this appeal.

## Discussion

### I

Appellant contends that the trial court erred in declaring Sonny "a person under a disability" and "in need of a legal guardian" without holding a hearing on that issue. The court

based its ruling solely on the petition for guardianship filed by Sonny's daughter, Sonya, and the certificates of two physicians attesting to the need for such a guardian, which accompanied it. The court believed that it was permitted to do so because neither appellant nor anyone else had filed an objection to the petition for guardianship on that issue, as required by the show cause order issued by that court.

The only issue that then remained, according to the trial court, was the question of whom to appoint as Sonny's guardian. Consequently, the court denied appellant's request for a hearing on the question of competency and prohibited the introduction of any evidence on that issue, including the testimony of the two doctors who provided the certificates attesting to Sonny's disability as well as the certificates themselves. Nor did it require the production of any evidence of the unavailability of "less restrictive form[s] of intervention." [17] In holding that the only issue before it was who was to be Sonny's guardian, the trial court erred.

Section 13–705(b) provides:

A guardian of the person shall be appointed if the court determines from clear and convincing evidence that a person lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person, including provisions for health care, food, clothing, or shelter, because of any mental disability, disease, habitual drunkenness, or addiction to drugs, and that no less restrictive form of intervention is available which is consistent with the person's welfare and safety.

In other words, a guardianship will only be imposed when a court finds, based on clear and convincing evidence, that: (1)

---

**17.** The physician certificates that were attached to the petition for guardianship were silent on this point. The only evidence produced by petitioner at trial was the testimony of Sonya, which consisted of only her flat statement that she considered "other less restrictive alternatives to guardianship." Even this evidence, however, was not considered by the trial court, because it had ruled, before the commencement of the hearing, that competency and the need for a guardian were not an issue before it.

the alleged disabled person lacks sufficient capacity to make or communicate responsible decisions about his basic needs; and (2) "no less restrictive form of intervention is available." The Maryland Rules, though arguably once ambiguous on this point,[18] now clearly indicate that a petition for guardianship alone cannot satisfy the "clear and convincing evidence" test; a hearing is required.

For example, although subsection (a) of Maryland Rule 10–205(a), which governs "Guardianship of the person of a minor," provides that if no response to the show cause order is filed, "the court may rule on the petition summarily," [19] subsection(b)(1) of that rule, which governs "Guardianship of alleged disabled person," conspicuously fails to grant that same authority to the court in the context of an adult proceeding, where the loss of fundamental rights and liberties is at stake.

Nor do the Maryland Rules provide for a waiver of such a hearing. While Maryland Rule 10–205(b)(1), for example, expressly provides that a jury trial may be waived at a guardianship proceeding, it does not provide for such a waiver in the context of a competency hearing. Moreover, that rule further provides that the physician certificates that accompany the petition for guardianship are "admissible as substantive evidence without the presence" of the doctors themselves "unless, not later than 10 days before trial, an interested person who is not an individual under a disability, or the attorney for the alleged disabled person, files a request that the physician or psychologist appear." That rule thus clearly contemplates that a hearing will be held and evidence taken on

---

**18.** Former Maryland Rule R77 provided that when no jury is requested and the petition for guardianship is not contested, the court may hold "such hearing as in its discretion it deems proper."

**19.** Maryland Rule 10–205(a), provides, in part:
(1) No response to show cause order. If no response to the show cause order is filed and the court is satisfied that the petitioner has complied with the provisions of Rule 10–203, the court may rule on the petition summarily.

the issue of competency even if it amounts to only the admission of the doctors' certificates.

Finally, the Court of Appeals Standing Committee on Rules of Practice and Procedure carefully considered this issue as the following portion of the minutes of that Committee discloses:

> With regard to hearings in proceedings for the guardianship of a disabled person, Mr. Lombardi stated that the Subcommittee could not decide which procedure was better, so it was presenting two suggestions under section (g). The Committee agreed that a jury trial could be waived but the question was could a hearing be waived. Ms. Ogletree pointed out that in some cases there was no need for a hearing. Judge Kaplan agreed, saying 99% of the cases had a hearing but the ability to waive should exist. Judge Chasanow disagreed, saying that the hearing could be brief and is a good protection against abuse. Judge Wilner pointed out that one could not get a divorce without a hearing. Mr. Brault moved to adopt ALTERNATE (g). Judge Chasanow seconded. The motion passed unanimously.[20]

Rules Committee Minutes, October ⅞, 1988, p. 58.

■ The Committee thus considered providing for a waiver of a competency hearing and actually drafted alternative rules,

---

**20.** The Committee considered the following two rules:

(g) Hearing—Guardianship of a Disabled Person

When the relief sought in the petition includes the appointment of a guardian of an alleged disabled person, the court shall set a hearing date unless the hearing is waived by counsel for the disabled person, the petitioner, and all interested persons who have objected to the relief requested. . . .

*ALTERNATE*

(g) Hearing—Guardianship of a Disabled Person

When the relief sought in the petition includes the appointment of a guardian of the person of an alleged disabled person, the court shall set a hearing date. The alleged disabled person or counsel appointed to represent the person may request a jury trial at any time prior to the date set for the hearing. If a jury trial is held, the jury shall return a special verdict pursuant to Rule 2–522(c) as any alleged disability.

one providing for waiver and the other without such provision. As the above portion of the minutes reveals, the Committee, heeding the counsel of Judges Chasanow and Wilner, adopted ALTERNATE (g), which eliminated the waiver provision and, in doing so, eliminated any question as to whether a competency hearing could be waived. We therefore conclude that a hearing on competency cannot be waived and must always be held for the petitioner to establish by "clear and convincing evidence" that the alleged disabled person is in need of a guardian.

## II

Appellant contends that the trial court erred in denying appellant's request that the two doctors, who had prepared the physician certificates of the guardianship petition and were in court pursuant to appellant's request under Maryland Rule 10–205(b)(1), be permitted to testify. Citing, once again, appellant's failure to contest the need for a guardianship in the objection to appointment of a guardian he filed, the trial court ruled that the only issue before it was who should be Sonny's guardian. Therefore, the court concluded, there was no need for the doctors' testimony, because it only related to competency.

Maryland Rule 10–205(b)(1), however, grants "an interested person" the right to request the presence of the doctors who prepared the certificates of the guardianship petition. *See also* Md. Rule 10–203(c).[21] It provides, in part, that:

A physician's or psychologist's certificate is admissible as substantive evidence without the presence or testimony of

Rules Committee Minutes, October ⅞, 1998, p. 52

**21.** Maryland Rule 10–203(c), "Notice to Interested Persons," informs interested persons that, among other things, they may object to the appointment of a guardian or otherwise participate in the proceeding. The rule further states that interested persons may request that the physician or psychologist that prepared the certificates appear at the trial. The rule does not require that an interested person file an objection to the guardianship petition in order to request the physician's or psychologist's appearance.

the physician or psychologist *unless,* not later than 10 days before trial, an interested person who is not an individual under a disability, or the attorney for the alleged disabled person, *files a request that the physician or psychologist appear.* If the trial date is less than 10 days from the date the response is due, a request that the physician or psychologist appear may be filed at any time before trial....

Md. Rule 10–205(b)(1)(emphasis added).

■ In accordance with Maryland Rule 10–205(b)(1), appellant filed, as an interested person, a timely request for the appearance at trial of the doctors in question. Although the doctors appeared as requested, the trial court excused them from testifying, over appellant's objection. As stated earlier, the issue of competency cannot be waived, either by failing to file the appropriate objection or otherwise, and a hearing must be held on that issue. At such a hearing, an interested party, like Shannon, has the right to request the presence of the certifying doctors and, by implication, their testimony, regardless of whether competency has been formally contested. *See* Md. Rule 10–203(c). The only condition precedent for requesting the presence of the certifying doctors, under Maryland Rule 10–205(b)(1), is that that request be made "not later than 10 days before trial." The trial court therefore clearly erred in excusing these physicians from testifying, after their presence had been properly requested by appellant.

Parenthetically, we would be remiss if we did not address the adequacy of the certificates that were relied on by the trial court in determining the need for guardianship, even though this issue was not raised on appeal. The two certificates in question were nine months old at the time of trial, which ordinarily might not be disturbing but for the fact that Sonny's social worker had stated that his cognitive abilities had recently improved and that "he was really pretty alert and fairly oriented," though she cautioned "some days are better than others". Indeed, the record of his testimony at trial reveals an individual who appeared to be oriented as to time and place and understood the purpose of the proceedings.

Although at times he seemed confused and forgetful, his testimony was otherwise coherent and even thoughtful. We are not unmindful of the fact, however, that the record of the proceedings is a written one and therefore does not necessarily convey any delay, hesitation, or confusion that might have preceded or followed his answers.

The certificates themselves are pre-prepared, single-paged forms, with the conclusory statutory language establishing the need for a guardian typed in, and with three blank lines to be used by the certifying doctors to describe the alleged disability. They are indeed slender documents in light of the weighty conclusions they are asked to bear. But we are not here as concerned with the form of those documents as we are with the failure of the certifying doctors in the instant case to provide the information required by Maryland Rule 10–202(a)(1).[22] Maryland Rule 10–202(a)(1) requires that each certificate include "a brief history of involvement with the disabled person" and specify the "cause" of the purported disability. Dr. Halvorson's certificate contains no such information. Indeed, it merely describes Sonny's disability as "dementia."[23] Although there are many different types of

---

**22.** *See* supra n. 4.

**23.** Dementia, according to the American Psychiatric Association (APA), is "characterized by the development of multiple cognitive deficits (including memory impairment) that are due to the direct physiological affects of a general medical condition, to the persisting effects of a substance, or to multiple etiologies (e.g., the combined effects of cerebrovascular disease and Alzheimer's disease)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM–IV) § 780.09 at 133 (American Psychiatric Association ed., 4 th ed.1994). The development of multiple cognitive deficits is the essential feature of dementia and that includes "memory impairment and at least one of the following cognitive disturbances: aphasia, apraxia, agnosia, or a disturbance in executive functioning." *Id.* at 134. Aphasia is a "deterioration of language function"; apraxia is an "impaired ability to execute motor activities despite intact motor abilities, sensory function, and comprehension of the required task"; agnosia is the "failure to recognize or identify objects despite intact sensory function"; and "[e]xecutive functioning involves the ability to think abstractly and to plan, initiate, sequence, monitor, and stop complex behavior." *Id.* at 134–35.

dementia,[24] and dementia may be "progressive, static, or remitting," [25] depending upon its stage and cause, Dr. Halvorson provides no more detailed diagnosis or description of Sonny's mental or physical health. In fact, alcohol-induced dementia, which is the type of dementia that is presumably afflicting Sonny (and presume we must because there is nothing in either certificate to indicate one way or the other), is apparently treatable.[26]

Dr. Zarick's certificate is no more informative. His certificate contains just a four word diagnosis: "dementia and prostate cancer". Other than to assert that he is Sonny's "attending physician" at the College View Nursing Home, his certificate does not state how long he has served in that capacity nor does it provide "a brief history of [his] involvement with" Sonny or the cause or stage of Sonny's dementia. Neither certificate indicates whether the certifying doctor ever reviewed Sonny's medical records before rendering his diagnosis, even though a thorough review of a patient's medical history is important to an accurate diagnosis of dementia.[27]

---

**24.** The American Psychiatric Association has identified various types of dementia, including: dementia of the Alzheimer's type, vascular dementia, dementia due to HIV disease, dementia due to head trauma, dementia due to Parkinson's Disease, dementia due to Huntington's Disease, dementia due to Pick's Disease, dementia due to Creutzfeldt–Jakob Disease, and substance-induced persisting dementia. DSM–IV at 133.

**25.** DSM–IV at 137.

**26.** In the case of alcohol induced dementia, "[a]bstention from alcohol . . . can lead to substantial long-term improvement." THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 1394 (Mark H. Beers, M.D. & Robert Berkow, M.D. eds., 17 th ed.1999). Abuse of alcohol may also lead to Wernicke's encephalopathy and Korsakoff's syndrome, two brain disorders whose symptoms are similar to dementia. *Id.* at 1383–84. Both disorders can be treated with increased levels of thiamine, re-hydration, and replacement of vitamins, though the prognosis is variable depending on the degree of damage to the brain. *Id.* "The prognosis of dementia depends on the underlying cause. Some dementias, as for example those due to hypothyroidism or cerebral infections, are reversible." PRINCIPLES OF GERIATRIC MEDICINE AND GERONTOLOGY 1096 (William R. Hazzard, et al. eds., 2nd ed.1990).

**27.** PRINCIPLES OF GERIATRIC MEDICINE AND GERONTOLOGY 1096; THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 1394.

In sum, the questionable adequacy of these certificates clearly illustrates the need for the testimony of the doctors who prepared them. The trial court therefore erred in not permitting those doctors to testify.

## III

Because a new hearing must be held, we now address the issue of Sonny's representation at that hearing. Appellant contends that, at the hearing below, Sonny was not afforded the legal representation required by Maryland law and the Rules of Professional Conduct. In the name of Sonny's "best interests", court appointed counsel waived Sonny's presence at trial in spite of his statutory right and desire to be there, prepared and submitted to the court a report containing recommendations that flatly contradicted Sonny's wish that a person other than a member of his family be appointed as his guardian, and sought to prevent a hearing on the issue of his disability by declining to request such a hearing and then by objecting to the introduction of all testimony on that issue. Sonny's counsel was, therefore, according to appellant, acting throughout this proceeding as an investigator for the court, or perhaps a guardian *ad litem*, but not as his attorney. We agree.

The duties of an attorney may at times directly conflict with the duties of a guardian *ad litem*. It is the role of an attorney to explain the proceedings to his client and advise him of his rights,[28] keep his confidences,[29] advocate his position,[30] and protect his interests.[31] Due process demands noth-

---

**28.** Rule 1.4(b) of the Maryland Rules of Professional Conduct states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

**29.** Rule 1.6(a) of the Maryland Rules of Professional Conduct states, in part, that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation...."

**30.** Rule 1.2(a) of the Maryland Rules of Professional Conduct states, in part, that "[a] lawyer shall abide by a client's decisions concerning the

ing less, particularly, as here, when the alleged disabled person faces significant and usually permanent loss of his basic rights and liberties. *See Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (stating that "[t]he 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardship of a criminal conviction, is a principle basic to our society'") (quoting *Joint Anti–Fascist Comm. v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951)(Frankfurter, J., concurring)); *see also Lassiter v. Department of Soc. Servs. of Durham County, N.C.,* 452 U.S. 18, 26–27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), *reh'g denied,* 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981). In guardianship proceedings, effective representation by counsel ensures that the proper procedures are followed by the court, that the guardianship is imposed only if the petitioner proves by "clear and convincing evidence" that such a measure is necessary and there is no reasonable alternative, that the guardianship remains no more restrictive than is warranted, ET § 13–705(b), that no collusion exists between the court appointed investigator and petitioner, and that the client's right to appeal is exercised, if appropriate.

█▌█ In contrast, it is the role of the guardian *ad litem* to investigate the facts of the case impartially, make an independent assessment of the need for a guardian, and render a report to the court, which may divulge the confidences of the alleged disabled person and make recommendations that may conflict with his or her wishes.[32] Indeed, in many cases, the

objectives of representation, ... and, when appropriate, shall consult with the client as to the means by which they are to be pursued."

**31.** Rule 1.3 of the Maryland Rules of Professional Conduct states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

**32.** Guardian *ad litem* is defined as "[a] guardian, usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party.—Also termed *special guardian.*" BLACK'S LAW DICTIONARY 713 (7 th ed.1999). This Court has stated that " '[w]hen the

guardian *ad litem* may serve as the principal witness against the alleged disabled person.[33]

Nonetheless, in Maryland the proper role of an attorney, court-appointed to represent an alleged disabled person in a guardianship proceeding, has been shrouded in ambiguity. Although ET § 13–705(d) provides that "[u]nless the alleged disabled person has counsel of his own choice, the court shall appoint an attorney to represent him in the proceedings," former Rule R76 stated that the court, in its discretion, may appoint an attorney to investigate and report to the court, leaving it unclear whether the court is to appoint another attorney to perform that function or to rely on the attorney appointed to represent the alleged disabled person.

Although Maryland Rule 10–106, which replaced Rule R76, does not directly address the issue, its implication is clear. Section (a) of that rule states, in part, that "[u]pon the filing of a petition for guardianship of the person or property of a disabled person or minor who is not represented by an attorney, the court shall promptly appoint an attorney for the disabled person." The language giving the court the authority to appoint an attorney to investigate and report to the court, has been eliminated from that section and a new section, section (c), has been added giving the court the authority to "appoint an independent investigator to investigate the facts of the case and report written findings to the court." For further guidance as to the proper role of counsel for the alleged disabled person, Maryland Rule 10–106(a) cross references, *inter alia*, Rule 1.14 of the Maryland Rules of Profes-

---

[trial] court appoints an attorney to be a guardian *ad litem* for a child, the attorney's duty is to make a determination and recommendation after pinpointing what is in the best interests of the child.' " *Auclair v. Auclair*, 127 Md.App. 1, 18, 730 A.2d 1260, 1269 (1999) (quoting *Leary v. Leary*, 97 Md.App. 26, 40, 627 A.2d 30 (1993)).

**33.** The Maryland R Rules previously provided for the discretionary appointment of a guardian *ad litem* in guardianship cases to investigate the facts and report their findings to the court. In 1970, the Rules were amended and the term "guardian *ad litem* " was replaced by the term "attorney."

sional Conduct. Rule 1.14 provides that when representing a client whose ability to make decisions is impaired, "the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client" and, if "that client cannot adequately act in the client's own interests," the lawyer "may seek the appointment of a guardian or take other protective action." The duty to maintain "as far as reasonably possible . . . a normal client-lawyer relationship" precludes an attorney from acting solely as an arm of the court, somewhat in the nature of a special master, and using his assessment of the "best interests" of the client to justify waiving the client's rights without consultation, divulging the client's confidences, disregarding the client's wishes, and even presenting evidence against him or her, which is apparently what occurred in this case.

The report filed with the court by Sonny's attorney recommended that he be found disabled, in need of a guardian, and that, contrary to Sonny's wishes, Sonya be appointed his guardian. By presenting that report to the court, Sonny's attorney became virtually the principal witness against Sonny's stated position.

Moreover, no evidence exists in the record that Sonny's counsel ever consulted him about waiving his right to be present at his hearing. ET § 13–705(e) provides:

> The person alleged to be disabled is entitled to be present at the hearing unless he has knowingly and voluntarily waived the right to be present or cannot be present because of physical or mental incapacity. Waiver or incapacity may not be presumed from nonappearance but shall be determined on the basis of factual information supplied to the court by counsel or a representative appointed by the court.

The only information presented by Sonny's counsel to explain his waiver of this fundamental right is to be found in her assertion in her motion to quash Shannon's subpoena for Sonny's appearance at trial that "it would be exceedingly harmful to Sonny E. Lee's current physical and mental health to be compelled to testify at this proceeding, due to the fact

that he is without doubt, an individual under a disability."
This is a particularly troubling aspect of those proceedings for
three reasons: First, counsel's conclusion that Sonny's physi-
cal and mental health precluded him from testifying did not
address his apparent waiver of his "right to be present" at
trial but only the desirability of his being compelled to testi-
fy.[34]  Second, counsel appears to assume that Sonny's status
as "an individual under a disability" is conclusive evidence that
his presence at such a proceeding would be a threat to his
physical and mental health.  And third, Sonny's "waiver or
incapacity" was presumed by the court without a determina-
tion "on the basis of factual information supplied to the court
by counsel or a representative appointed by the court" that he
in fact waived his right to be present, or was so incapacitated
that he could not be present at trial.  *See* ET § 1305(e).
While this issue was rendered moot by Sonny's appearance in
court as a result of the transmission of his request to be there,
it bears reciting because it illustrates the extent to which
Sonny was without representation in even basic matters, such
as the right to attend a proceeding where his fundamental
rights and liberties were at stake.

Once Sonny took the stand, he received little assistance
from his counsel in presenting his position as to whom to
appoint as his guardian.  Indeed, his reasoned proposal that
the court appoint someone other than a family member was
elicited by appellant's counsel, not his own.  His attorney
thereafter presented no evidence as to whether this was
possible, desirable, or had ever been considered by her or
discussed with Sonny.  Moreover, her repeated objections to
the introduction of any testimony on the question of the
nature and extent of Sonny's disability, on the ground that this
issue had already been decided, transformed her from adverse
witness to Sonny's opposing counsel.  And when the court

---

**34.** Maryland Rule 10–205(b)(1) provides, in part, that "[i]f the alleged
disabled person asserts that, because of his or her disability, the alleged
disabled person cannot attend a trial at the courthouse, the court may
hold the trial at a place to which the alleged disabled person has
reasonable access."

adopted his counsel's recommendation for a guardian and rejected his own, Sonny had no one to provide him with disinterested advice as to whether to appeal. In short, at no time, from the inception of these proceedings to their conclusion, was Sonny provided with the legal representation contemplated by Maryland law or the Rules of Professional Conduct.

Finally, this opinion should not be construed as a determination by this Court that Sonny is not a person under a disability or in need of a guardian or that the appointment of Sonya as Sonny's guardian is inappropriate. Such decisions, however, must be made in accordance with applicable law and the procedural safeguards provided for Sonny's protection.

**JUDGMENT VACATED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**