REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 126

September Term, 2015

_____

KURT KRATZ, BY AND THROUGH HIS
GUARDIAN, CAROLE KRATZ-SPERA

v.

MEDSOURCE COMMUNITY SERVICES,
INC.
_____

Krauser, C.J.,
Berger,
Sharer, J. Frederick
    (Retired, Specially Assigned),

JJ.
_____

Opinion by Sharer, J.
_____

Filed: June 29, 2016

Presented in this appeal is the question of whether the appointment of a guardian of the person of a mentally incompetent person removes the disability of that person for purposes of application of the statute of limitations. The Circuit Court for Prince George's County (Hon. Albert Northrop, J.) ruled that the guardian of the person is not excused from the operation of the statute of limitations.

The Circuit Court for Prince George's County found that appellant, Kurt Kratz, an adult, lacks the capacity to make responsible decisions concerning his person due to a mental disability or disease,[1] and appointed his mother, Carole Kratz-Spera, and his sister, Heather Lamont, guardians of his person, on July 18, 2008. On June 18, 2013, and June 6, 2014, Kratz, by his guardian, Kratz-Spera, filed complaints in the Circuit Court for Prince George's County against appellee, MedSource Community Services ("MedSource").

Kurt Kratz was a resident of a group home operated by MedSource in Laurel, Prince George's County when two incidents occurred, both resulting in injury to him, from which the complaints in this case arose. On March 22, 2006, he gained improper access to a bottle of chloral hydrate and ingested a quantity of the contents. On November 24, 2009, he was injured when his hand was submerged into a pot of boiling water. Both complaints alleged medical negligence resulting in injury.

MedSource moved to dismiss the initial complaint for failure to arbitrate pursuant to the Maryland Health Care Malpractice Claims Act. The motion was denied and a stay was ordered to allow for proceedings in the Health Care Alternate Dispute Resolution Office.

---

[1] Kurt Kratz suffers from autism and intellectual disability.

After there was no resolution through arbitration, Kratz-Spera filed the second complaint, again alleging medical negligence as a result of both the 2006 and 2009 incidents. Kratz-Spera's motion to lift the stay in the first case and consolidate the complaints was granted by the circuit court.

On February 26, 2015, the circuit court granted MedSource's motion to dismiss, as to all counts in both complaints. Kratz-Spera thereafter noted this timely appeal, raising the following issue:

> Whether the Circuit Court erred in granting the motion to dismiss and finding that the appointment of a guardian of the person "removes the disability" of a mentally incompetent individual for purposes of the Maryland tolling statute.

We shall affirm the judgment of the circuit court. The tolling exception addresses a disability that is not a procedural one; rather it is a disability that prevents one from understanding the existence of a cause of action. The statute of limitations begins to run after the knowledge has been gained, which occurs when a guardian learns of the facts giving rise to the cause of action.

## BACKGROUND

Kurt Kratz is an adult who suffers from severe autism and intellectual disability. On July 18, 2008, the circuit court appointed his mother, Carole Kratz-Spera, and his sister, Heather Lamont, as guardians of his person after finding that he "lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person, including provisions for health care, food, clothing, or shelter." The order granted

the guardians "all the rights, duties and powers as set forth in Estates and Trusts Article, Section 13-708 ... with the general discretion of the guardian concerning living arrangement within this State, non life threatening medical care and procedures, clothing and food." Kratz at all relevant times lived in a group home operated by MedSource.

On March 22, 2006, Kurt Kratz gained access to a bottle containing chloral hydrate, a sedative, and ingested a large quantity of the substance. Coincidentally, Kratz-Spera arrived at the MedSource group home to visit her son at that time, and found him asleep and "foaming at the mouth and breathing erratically." Kratz-Spera instructed MedSource employees to call an ambulance, which transported Kratz to a hospital, where he remained in a coma for approximately 60 days.

On November 24, 2009, Kratz suffered second degree burns when his hand was submerged into a pot of boiling water at the MedSource group home. A Medsource employee reported to police during an investigation, in conjunction with Adult Protective Services, that he observed another MedSource employee hold Kratz's hand momentarily in the hot water. Kratz-Spera was notified of this incident the following morning.

On June 18, 2013, Kratz, by his guardian Kratz-Spera, filed a complaint in the Circuit Court for Prince George's County against MedSource, alleging liability on three different theories for negligence related to the second incident.[2] MedSource moved to dismiss the

---

[2] Kratz-Spera had previously filed a complaint on behalf of Kratz concerning both incidents, on May 12, 2012, but voluntarily dismissed it on August 30, 2012. Kratz does not assert that the 2012 complaint preserves his rights as to the second incident, nor would he be

(continued...)

complaint on the grounds that the Maryland Health Care Malpractice Claims Act required arbitration prior to filing an action in court. The circuit court denied the motion to dismiss, but ordered a stay to allow Kratz to pursue a remedy through the Health Care Alternative Dispute Resolution Office.

On June 6, 2014, Kratz, by his guardian Kratz-Spera, and Kratz-Spera, individually, filed a complaint asserting liability on three different theories for both incidents, as well as claims for medical and related expenses and loss of income and wage earning capacity incurred by Kratz-Spera. Kratz's counsel conceded that the new complaint was a redundancy to ensure the first case, previously stayed, was re-opened.

MedSource moved to dismiss the complaint on limitations grounds, arguing that Kratz's disability had been "removed" for limitations purposes upon the appointment of the guardians. Hence, MedSource asserts, limitations began to run at the time the guardian gained notice of each incident.

On February 26, 2015, the circuit court lifted the stay in the first case, consolidated the two cases, and dismissed all counts. The circuit court ruled:

> Plaintiff contends that the right of action by a mentally incompetent person would never be subject to the statute of limitations regardless of appointment of a guardian. This Court

---

[2](...continued) able to do so under the relation-back doctrine. *See*, *e.g.*, *Wilcox v. Orellano*, 217 Md. App. 417 (2014) (precluded from re-filing malpractice action outside limitations period after stipulating to dismissal of initial action); *Bi v. Gibson*, 205 Md. App. 263 (2012) (principle of relation-back did not save negligence action that was voluntarily dismissed and filed again beyond limitations period).

believes that runs against the prevailing policy arguments supporting the existence of a statute of limitations as well as the statutes and supporting case law on guardianships in Maryland.

## Standard of Review

We review the grant of a motion to dismiss by determining whether the trial court was legally correct; we must determine whether the complaint, on its face, discloses a legally sufficient cause of action. *Britton v. Meier*, 148 Md. App. 419, 425 (2002) (quoting *Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 71-72 (1998)). We presume the truth of all well-pleaded facts in the complaint, together with any reasonable inferences drawn therefrom. *Id.* "Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Id.* (quoting *Faya v. Almaraz*, 329 Md. 435, 443 (1993)).

Particularly regarding motions to dismiss on limitations grounds, the Court of Appeals has said:

> We have held consistently that "the question of accrual in § 5-101 is left to judicial determination." *Frederick Rd. Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 95 (2000). We review the grant of [the] motion in order to "determine whether the court was legally correct." *Parks* [*v. Alpharma, Inc.*,] 421 Md. [59, 72 (2011).]

*Kumar v. Dhanda*, 426 Md. 185, 193 (2012).

## DISCUSSION

MedSource maintains that the complaint was legally insufficient because the statute of limitations began running when Kratz-Spera, as guardian, discovered each of the separate

incidents, and therefore had run by the time she filed the initial complaint. Kratz-Spera, on behalf of Kratz, argues that the appointment of a guardian of the person has no effect for statute of limitations purposes. She contends that, because her son remains under the disability, the tolling exception in the Courts and Judicial Proceedings Article of the Maryland Code ("CJP"), section 5-201, continues to apply to his claims. She asserts that guardians charged with making decisions regarding his person do not have an affirmative duty to sue on his behalf.

The general statute of limitations in Maryland for a civil cause of action is three years and is codified in CJP § 5-101, which provides:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

We explained in *Antar v. Mike Egan Insurance Agency* that, when considering the statute of limitations,

> it is appropriate to take note of the fact that we are not dealing with a common law of limitations or with some judicial doctrine of limitations. We are dealing with the *Statute* of Limitations. As the noun "Statute" expressly states, we are dealing with a legislative policy determination to establish a definite and certain deadline for the filing of a civil lawsuit, notwithstanding the fact that an occasional injustice or hardship might sometimes result from such an arbitrary and definite legislative pronouncement.

209 Md. App. 336, 341 (2012).

We further emphasized that "statutes of limitations are to be strictly construed and courts will decline to apply strained construction that evades the effect." *Bi v. Gibson*, 205 Md. App. 263, 266 (2012) (citing *Decker v. Fink*, 47 Md. App. 202, 206 (1980)).

As MedSource is a "health care provider" pursuant to the Maryland Health Care Malpractice Claims Act, *id.* § 3-2A-01, the applicable statute of limitations is within the earlier of five years of the injury or three years of the date the injury was discovered. CJP § 5-109(a). Kratz-Spera discovered her son's injury from the ingestion of choral hydrate on the day it occurred, March 22, 2006; it was she who alerted MedSource staff to the event. She was notified of the burn injury the day after it occurred, on November 25, 2009. Her knowledge operates as discovery under the statute. By any measure, even the earlier of the two complaints was filed more than three years after knowledge was acquired. The parties disagree only as to when, and if, the limitations countdown began.

The tolling exception for filing a civil cause of action provides, "When a cause of action subject to a limitation under Subtitle 1 ... accrues in favor of a minor or mental incompetent, that person shall file his action within the lesser of three years or the applicable period of limitations after the date the disability is removed." CJP § 5-201(a). MedSource contends that the appointment of a guardian removes the disability and begins the period of limitations running.

Courts have been careful to limit tolling exceptions to their narrowest definitions. "[W]here the legislature has not expressly provided for an exception in a statute of

limitations, the court will not allow any implied or equitable exception to be engrafted upon it." *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 623 (1985). *See also Garay v. Overholtzer*, 332 Md. 339, 359 (1993) (detailing Court of Appeals's unwillingness to give expansive interpretation to, or recognize implied exceptions, in CJP § 5-201). For instance, the tolling exception was not available to a plaintiff who, though he had been confined to the Patuxent Institution when the claim accrued, was never adjudicated as mentally incompetent. *McDonald v. Boslow*, 363 F. Supp. 493, 496 (D. Md. 1973) ("commitment to Patuxtent is not, in and of itself, an adjudication of *non compos* status sufficient to toll the statute"). And, once the limitations period begins to run, an intervening disability will not interrupt it. *Kluckhuhn v. Ivy Hill Ass'n*, 55 Md. App. 41, 48 (1983); *Gump v. Sibley*, 79 Md. 165, 169 (1894).

The tolling exceptions stem from the same line of reasoning that developed into the 'discovery rule' applicable to all civil litigants. In order to begin the running of the limitations period, it must be shown that the plaintiff had "actual knowledge – that is, express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry." *Poffenberger v. Risser*, 290 Md. 631, 637 (1981) (internal quotations omitted). The rule serves to "distinguish between a 'blamelessly ignorant' plaintiff and one who had acted negligently and 'slumbered on his rights.'" *Doe v. Maskell*, 342 Md. 684, 690 (1996) (quoting *Hecht v. Resolution Tr. Corp.*, 333 Md. 324, 334 (1994)).

This concept, as applied to mentally incompetent individuals, serves to protect those who lack the mental capacity to comprehend and safeguard their legal rights. *Buxton v. Buxton*, 363 Md. 634, 646-47 (2001); *see also Decker v. Fink*, 47 Md. App. at 207, *Doe v. Maskell*, 342 Md. at 689-90. The disability of mental incompetence is "not a medical term but an imprecise legal one," so it is "the inability of the person, by reason of the incompetence, to understand that he or she has a cause of action and to take the necessary steps to file the action" that is the concern. *Buxton*, 363 Md. at 647-48. The laches defense raised in *Buxton* failed because the mentally incompetent plaintiff was without the requisite knowledge of the wrongs against him to trigger application of the common law defense. *Id.* at 648-49; *cf. Green v. Lombard*, 28 Md. App. 1, 14 (1975) (statute of limitations did not begin to run for claim against guardian until third party with standing to sue obtained knowledge of injury over a decade after injury occurred).

We made the same distinction in *O'Hara v. Kovens*, 60 Md. App. 619 (1984).[3] There, a mother and her two sons brought a common law fraud action against a group of individuals who had purchased the stock in a racetrack previously owned by the O'Haras. *Id.* at 621-22. Two years prior to bringing the suit, the sons were appointed guardians of their mother's property and estate after she was adjudicated mentally incompetent. *Id.* at 635. The claims were barred by limitations, but the sons argued that the statute had been tolled as to Mrs.

---

[3] The Court of Appeals reversed to the extent it regarded affirming the dismissal of the sons' claims on the grounds that discovery of fraud is a factual issue and therefore, the case could not be decided on summary judgment. *O'Hara v. Kovens*, 305 Md. 280 (1986).

O'Hara's claims, pursuant to CJP § 5-201. *Id.* at 634-35. We rejected the tolling argument as a "tangent" and a "red herring," but ruled that, under the discovery rule, "Mrs. O'Hara was not capable of having the knowledge or awareness that would trigger the running of the statute." *Id.* at 635-36. Because she was incapable of that knowledge, her claim only accrued "when guardians capable of being charged with knowledge and notice on her behalf were appointed." *Id.* at 636.

The only Maryland case presented to us in this appeal dealing directly with the issue of a guardian triggering the statute of limitations pre-dates the Maryland guardianship statute by almost 60 years. *Funk v. Wingert*, 134 Md. 523 (1919). In *Funk*, the circuit court held that when a trustee or committee was appointed, there was no longer a disability and the statute began to run. *Id.* at 524-25. In reversing the circuit court, the Court of Appeals held the tolling exception included an individual found to be mentally incompetent for whom a "committee," or guardian, had been appointed:

> Such a suit must still be brought in the name of the *non compos* by another, and he is under no less disability to bring suit after the appointment of a committee than he was before, the only difference being that before such an appointment the suit would be by the lunatic in his own name by his next friend, and after the appointment it would be in the name of the lunatic by his committee.

*Id.* at 526.

The enactment and codification of the guardianship laws and the development of the discovery rule, subsequent to *Funk,* have created a substantive difference in the status of a

mentally incompetent person before and after appointment of a guardian. We conclude that, in view of the modernization of guardianship proceedings by legislative action to the present time, the rule of *Funk* is no longer sustainable.

Indeed, prior to the appointment of a guardian, any "next friend" can bring suit on behalf of the individual.[4] Under the tolling exception, the next friend can do so at any time because the mentally incompetent individual would not have, at any point, gained the knowledge necessary to understand the existence of a cause of action. A guardian though, granted the "powers necessary to provide for the demonstrated need of the disabled person" by section 13-708(a)(1) of the Estates and Trusts Article ("ET"), operates as the competent party responsible for the mentally incompetent adult's needs, and is subject to the statute of limitations once knowledge is gained that those needs have been jeopardized by a tortfeasor.

Kratz-Spera urges us to compare a mentally incompetent adult with a minor, arguing that the General Assembly, by treating the two types of disabled individuals in the same limitations statute, indicates "a close link between the two protected classes of people." Notably, the guardianship statute also makes a direct comparison between minors and persons under disability: "The rights, duties, and powers which the court may order include ... [t]he same rights, powers, and duties that a parent has with respect to an unemancipated minor child ...." ET § 13-708(b)(1).

---

[4] A next friend may pursue a cause of action on behalf of an individual by establishing: (1) an "adequate explanation—such as inaccessibility, mental incompetence, or other disability" why the individual cannot appear; and (2) that he is "truly dedicated to the best interests" of the individual. *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990).

However, there are two significant distinctions between minors and mentally incompetent individuals that bear on the issue before us. First, unlike mentally incompetent individuals, the disability of infancy has a finite end date. *Mason v. Bd. of Educ. of Balt. Cty.*, 143 Md. App. 507, 515 (2002) (disability of infancy is removed the day prior to 18th anniversary of individual's birth). Potential defendants are thus aware that, within a calculable amount of time, they may be subject to suit.

A second distinction exists in the relationship between those under disability and their guardians. For a child, the guardian is, by default, the parent, unless other arrangements have been made and approved by the court. The tolling exception applicable to minors is meant to protect children from a curtailment of their legal rights should a parent neglect to file suit within the typical statute of limitations. *Piselli v. 75th Street Medical*, 371 Md. 188, 216 (2002) ("if the parents' failure to bring a claim before the expiration of limitations had the effect of barring the minor child's claim, the child would be twice victimized — once at the hands of the tortfeasor, and once by parents who, for whatever reason, failed to timely prosecute the claims") (quoting *Johns Hopkins Hospital v. Pepper*, 346 Md. 679, 695 (1997) (quotations omitted)). Rather than entrust the right to sue to a parent, who might lack the knowledge, experience, means, or plain enthusiasm to sue, the exception serves to save the legal action for the child to pursue, if he so chooses, once majority is gained.

As to a mentally incompetent adult, on the other hand, the guardian must petition the court and satisfy the statutory requirements prior to appointment. ET § 13-705(a); Md. Rule

10-201. *See also In re Lee*, 132 Md. App. 696 (2000). Therefore, as the guardian of a mentally incompetent adult actively seeks to be an advocate, the concerns expressed by the courts in cases involving children and the statute of limitations are not as great where the guardianship is not imposed by operation of law. Although the guardianship statute allows the court to grant the guardian "[t]he same rights, powers, and duties that a parent has with respect to an unemancipated minor child," ET § 13-708(b)(1), the comparison does not extend to the application of the statute of limitations. A guardian has a right to bring suit on behalf of a mentally incompetent individual, as does a parent on behalf of a minor child, but imposing the statute of limitations on a guardian does not threaten the mentally incompetent adult's rights the way it would those of a child.

In the matter before us, the circuit court opined that a tolling exception for mentally incompetent persons even where a guardian is appointed "runs against the prevailing policy arguments supporting the existence of a statute of limitations as well as the statutes and supporting case law on guardianships in Maryland." For the reasons we have discussed, we agree. We cannot imagine a policy requiring a potential defendant to be on notice of future litigation for years, if not decades, to be a sound public policy.

The tolling exception preserves the legal rights of a mentally incompetent individual until a guardian is appointed; once a guardian is appointed, and gains the requisite knowledge to file a claim on the individual's behalf, the statute begins to run.[5]

---

[5] Given the distinctions discussed above, our holding in this case does not affect the
(continued...)

-13-

Kratz-Spera failed to file the complaint in a timely manner. The claims that arose from the 2006 incident were preserved by the tolling exception until July 18, 2008, when the co-guardians of the person were appointed, at which point the statute of limitations began to run, as Kratz-Spera had knowledge of the injury. Likewise, her knowledge of the 2009 incident triggered the statute when it was reported to her the day after it occurred, on November 25, 2009. Therefore, the statute of limitations on the claims had already run when Kratz-Spera first filed a complaint on June 18, 2013.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED;
COSTS ASSESSED TO APPELLANT.**

---

[5](...continued)
tolling exception relevant to minor children as discussed in, among others, *Piselli v. 75th Street Medical*, 371 Md. at 212, and *Mason v. Bd. of Educ. of Balt. Cty.*, 143 Md. App. at 515.